AMERICAN SURETY COMPANY OF NEW YORK
*v.* JENNIE E. McMULLEN ET ALS.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued December 1, 1942—decided February 3, 1943.

*Arthur T. Keefe,* with whom, on the brief, was *Douglas A. Anello,* for the appellant (plaintiff).

*Frank L. Wilder* and *Allan K. Smith,* for the appellees (defendants).

MALTBIE, C. J.  The plaintiff was surety upon a bond given by Ray W. McMullen as conservator of the estate of Harry H. Cabot and as such surety it paid $71,733 to a trust company, executor of the estate of Cabot, who had died, to reimburse it for misappropriations by McMullen.  The plaintiff brought this action to secure reimbursement for the money so paid, making defendants Ray W. McMullen and Jennie E. McMullen, individually and as executors of the estate of Arthur McMullen, and the Century Indemnity Company, surety on their bond as such executors. The trial court gave judgment against Ray E. McMullen personally and for the other defendants, and the plaintiff has appealed.

There is little dispute as to the underlying facts, and, making a few minor changes in the finding, we summarize them.  At the time of his death in 1926, Arthur McMullen was president and treasurer of a corporation bearing his name and the owner of all but two of its shares of stock.  He left a will in which his wife, Jennie E. McMullen, was made sole legatee and devisee, and she and Ray McMullen were named ex-

ecutors. They gave a bond with the Century Indemnity Company as surety which recited their appointment as executors and which was conditioned that they "shall faithfully discharge the duties of their said trust according to law." Except for some stock sold in 1927, substantially all the assets of the estate consisted of the stock in the McMullen Company, and the only income the estate ever received was from this stock. The company conducted a profitable business for a few years after the death of Arthur McMullen but has done no business since 1933. In 1935 it was reorganized under the Bankruptcy Act and new shares of stock were issued, 179,820 to the McMullen estate. In 1937 it went into receivership, all its assets were sold to pay a judgment against it and since then it has had no assets. There were large outstanding claims against the McMullen estate, and it was kept open in the hope of paying these from the income derived from the stock in the company. The Century Company never requested the executors to close the McMullen estate. From the death of Arthur McMullen, Ray McMullen was an officer and director of the McMullen Company and directed and determined its policies and financial affairs. Mrs. McMullen was elected a director, but was not an officer and never attended a directors' meeting. She signed papers when requested by Ray McMullen to do so, but only as to one matter, a loan from the Reconstruction Finance Corporation, did he ever consult her, and she never interfered with the running of the business. They treated the estate and the company as one and the same. Previous to 1934, but not since, she received money from Ray McMullen which she was led to believe came from the operation of the company by the estate.

Ray McMullen was conservator of the estate of Henry H. Cabot and as such had, in a safe deposit vault, bonds of a value of more than $70,000. From time to time in 1935 and 1936 he took these bonds, placing in the box receipts for them signed by him personally. In 1936, anticipating that Cabot would soon die, he prepared a series of notes representing the value of the bonds he had taken, signed "Estate of Arthur McMullen, Ray W. McMullen, Executor." No one except the stenographer who drew them knew of these notes until he sent them, after Cabot's death, with his account as conservator, to the executor of Cabot's estate. He also sent to the executor a certificate for 75,000 shares of stock of the McMullen Company which he had caused to be issued and which represented a part of the 179,820 shares which had been previously issued to the estate. The plaintiff ultimately paid to the executor of the Cabot estate $71,733 on account of McMullen's misappropriations. The executor thereupon indorsed and delivered the notes and assigned the stock to the plaintiff. Jennie McMullen knew nothing of the misappropriation of the bonds or the making of the notes in the name of the estate until after Cabot's death; she did not authorize the sending of the certificate for 75,000 shares to the executor of the Cabot estate, and did not know of it until after the misappropriation was discovered.

The trial court further found that the first five bonds taken by Ray McMullen were delivered to the conservator of another estate to pay a personal loan made by it to him, and a small balance above the loan resulting from their sale was paid to him personally; that he borrowed large sums from two New York banks, giving his personal notes secured by some of the bonds misappropriated by him, the bonds were sold

and substantial balances credited to his personal accounts; that he deposited in a bank account, in the name of the estate of Arthur McMullen, $6,797.04, representing money received through the sale of misappropriated bonds, at least $2,416.66 of which sum was expended for or paid to him personally or for the benefit of persons in no way connected with the estate and as to the disposition of the balance of which no satisfactory evidence was introduced; and that neither Jennie McMullen nor the McMullen estate received any benefit from any of the bonds misappropriated by him. This last finding the plaintiff attacks.

The plaintiff does not base its right to recover upon its ownership of the notes received from the executor of the Cabot estate, but claims rather as subrogee of such rights as the Cabot estate would have had except for the payment made to it by the plaintiff as surety on McMullen's bond as conservator, in satisfaction of the loss. The claims of the plaintiff against the defendants at the trial and before us leave much to be desired in the way of a clear statement of the various grounds on which it seeks recovery. We have, however, searched the record, and have found no tenable basis for any claim of liability on the part of the defendants other than McMullen.

Mrs. McMullen did not participate in any way in the misappropriation of the bonds. The fact that she was coexecutor of the estate with McMullen would not make her liable for his wrongful conduct in doing something entirely outside the scope of his duties as executor. The plaintiff makes broad claims as to the negligence of Mrs. McMullen in leaving the management of the estate so completely in the hands of McMullen, but it does not appear how that could have adversely affected the rights of the Cabot estate, un-

less it could be claimed that, by a greater supervision of his activities, she might have discovered the misappropriations, or, by bringing about a settlement of the estate before they occurred, might have prevented them. There is no finding, nor are we asked to find, that Mrs. McMullen personally received any part of the proceeds of the misappropriations. The court refused to find that any of the proceeds were used for the estate or the McMullen Company, but we are asked to add to the finding the fact that this was so. The only support of the claim for the addition to the finding is the testimony of McMullen supported by certain items in a personal account book kept by him; but, in its memorandum of decision, the trial court states that it could not give credence to this evidence, and we cannot, upon the record before us, find that it committed error in this respect. Aside from one matter to be discussed later, the absence of a finding that any part of the funds were used for the estate or the company leaves without basis the claim that Mrs. McMullen, in the exercise of her duties as executrix, should have discovered the misappropriations. Her duty, as coexecutor, to see that the estate be as speedily settled as could reasonably be done was not one owed to the world at large but to those having an interest in the estate, and, for any breach of that duty, she would be primarily answerable in the Probate Court, not to strangers to the estate in a court of general jurisdiction. *Reiley* v. *Healey*, 122 Conn. 64, 79, 187 Atl. 661; *First National Bank & Trust Co.* v. *McCoy*, 124 Conn. 111, 115, 198 Atl. 183. There is no basis in the facts to hold Mrs. McMullen liable on the ground that she was unjustly enriched as a result of the misappropriation.

With respect to the plaintiff's claim against the executors as such, it is to be remembered that in this

state, whatever the law elsewhere, the only action on such a claim as the plaintiff makes is that authorized by § 5640 of the General Statutes. Before recovery can be had under that statute, it is necessary to find that the claim is "a just one and one which ought to be equitably paid out of" the estate. It may be that if an executor acts "reasonably and in good faith" in an effort to protect assets of the estate, even though he is unsuccessful, the estate may be equitably bound to compensate a person whose money has been used for that purpose; *Hewitt* v. *Beattie,* 106 Conn. 602, 613, 138 Atl. 795; but there is nothing in the finding or in the requests for additions to it which shows that McMullen's conduct met this requirement. To treat McMullen's misappropriation of the bonds as a borrowing of them or the proceeds of their sale by him in his capacity of executor, as the plaintiff does in its brief, has no justification in the facts of the case. The only other ground, and the principal one advanced by the plaintiff, is that the estate was unjustly enriched as a result of the misappropriation. The trial court has found this not to be so, and, as we have said, we cannot correct the finding in this respect.

As regards the liability of Mrs. McMullen or the estate, there is left for consideration only the situation created by the deposit by McMullen of a substantial sum from the proceeds of the misappropriation in an account in the name of the estate of Arthur McMullen, a part of which he checked out for his own benefit or that of persons in no way connected with the estate, and as to the disposition of the remainder of which there was no satisfactory evidence. The plaintiff claims that this money went to the benefit of the estate and that it was thereby enriched. But the deposit of the money in the account did not make it an asset of the estate. The estate of a deceased per-

son consists of property the title to or an interest in which is derived from him, which it is the duty of the executor or administrator to inventory and for which he must account to the Probate Court. An executor may, for instance, deposit money of his own in an account in the name of the estate; so far as it is used for the purpose of the estate he may, on his accounting, be given credit for it; but, if not so used, he is entitled to withdraw it at any time for his own benefit. *Williams* v. *Morehouse,* 9 Conn. 470, 474; *State* v. *French,* 60 Conn. 478, 480, 482, 23 Atl. 153; *Hewitt* v. *Beattie,* supra, 612; *Reiley* v. *Healey,* supra, 76. The moneys we are considering, by their deposit in an account in the name of the estate, did not become assets of the estate; there was no obligation on Mrs. McMullen to account for them and until used for the benefit of the estate they did not enrich it. As it was not established that any of the money went for the benefit of the estate, there was no basis for claiming that the estate was equitably liable for it. As the money was not an asset of the estate, when McMullen expended it for purposes other than the benefit or protection of the estate he was not guilty of converting its assets, and for this, if for no other reason, Mrs. McMullen, as coexecutor, was not personally liable upon the ground that she would be equally responsible with him for his use of the fund. Undoubtedly, for certain purposes, coexecutors "are considered in law as an individual person"; *Foster* v. *Mix,* 20 Conn. 395, 400; but that principle is not carried so far as to hold one coexecutor liable for misuse of funds of the estate in possession of another executor, unless he has delivered them to that other or has concurred in or been negligent in not preventing that misuse. *Peter* v. *Beverly,* 10 Pet. (35 U. S.) 532, 562, 9 Law Ed.

522; *Nanz* v. *Oakley*, 120 N. Y. 84, 89, 24 N. E. 306; 24 C. J. 1189, § 2836; 34 C. J. S. 1323, § 1045.

The only ground of liability claimed against the Century Indemnity Company, aside from that based upon the claim which we have stated to be without foundation, that a part of the proceeds of the misappropriation became a part of the McMullen estate, is that it ought to have seen to it that the estate was settled before the misappropriation occurred; but it is a sufficient answer to this claim that, as we have already said, the question whether or not the estate should have been settled would be a matter primarily for the Probate Court to decide, and it does not present an issue properly to be determined in this action.

Mrs. McMullen filed a cross-complaint, individually and as executrix, asking judgment that plaintiff redeliver to her the certificate for 75,000 shares of stock of the McMullen Company received by the plaintiff from the executor of the Cabot estate, and also claiming damages. The trial court found that the stock was valueless. It gave judgment that, individually and as executrix, she recover $1 damages. All that the finding states is that the certificate was forwarded with McMullen's accounting and the notes he made representing the misappropriation of the bonds to the executor of the Cabot estate. He had no right to use assets of the estate to make good the results of his individual wrongdoing in misappropriating the bonds and the executor was not in the position of a bona fide purchaser for value. It and its subrogee, the plaintiff, had no right to retain them. It is true that, as the stock was a part of the unsettled estate of Arthur McMullen, the judgment should not have been that Mrs. McMullen individually recover the $1 given as damages; but the matter is too inconsequential to

justify a remand of the case merely to have the judgment corrected in this respect. Conn. App. Proc., § 19.

There is no error.

In this opinion the other judges concurred.