Beverly L. BREAUX, Attorney for Nora Eichorn Boswell, Appellant,

v.

ALLIED BANK OF TEXAS, Second Temporary Guardian of Estate of Nora Eichorn (Boswell), Appellee.

No. C14–84–791–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 26, 1985.

Rehearing Denied Nov. 7, 1985.

Leo J. Landry, Houston, for appellant.

Mark P. Blendin, Lapin, Totz & Mayer, Houston, for appellee.

Before MURPHY and DRAUGHN, JJ.

## OPINION

MURPHY, Justice.

This is an appeal in a guardianship proceeding. The trial court granted a summary judgment denying Appellant, Beverly Breaux, recovery of attorney's fees for legal services allegedly provided to Nora Eichorn. Appellant raises eleven points of error arguing that the trial court erred in granting the summary judgment in favor of Appellee, Allied Bank of Texas, Second Temporary Guardian of the Estate of Nora Eichorn (Boswell), N.C.M. We affirm.

In May 1981, Eichorn and Breaux entered into a contract for legal services. Those services were for estate planning. On June 17, 1981, Eichorn was hospitalized for a stroke-like condition which left her mentally and physically impaired. After Eichorn's hospitalization, Breaux prepared James Boswell's application to be named Eichorn's temporary guardian. That application stated that Ms. Eichorn was "unable to handle day-to-day affairs, care for herself, or to do those things necessary to protect and preserve her property." In response to this application, on June 26, 1981, Boswell was named Eichorn's temporary guardian. After Boswell was appointed, Breaux claims that Eichorn requested that additional legal services be performed.

On September 2, 1981, the Probate Court, with Appellant's agreement, entered an order appointing Allied Bank as temporary guardian of Eichorn's estate and Michael Cenatiempo as temporary guardian of Eichorn's person. That agreed order also provided that "the appointments of Allied Bank of Texas and Michael J. Cenatiempo as Temporary Guardians shall terminate on October 27, 1981 unless otherwise ordered by this court."

On November 3, 1981, James Boswell filed an application for payment of attorney's fees to Appellant through October 31, 1981. In her affidavit of April 16, 1984, Appellant acknowledged she had been paid for services rendered through October 31, 1981.

Appellant presented claims for attorney's fees to Allied Bank covering the period from November 1, 1981, to May 31, 1983, alleging that she was Eichorn's attorney. Allied Bank refused to pay the claims. Appellant then filed suit on the rejected claims on September 15, 1983. After filing its answer, Appellee filed a Motion for Summary Judgment requesting Appellant take nothing. Breaux filed a response to that motion and a Cross-Motion for Summary Judgment. The trial court found that the following material facts were without dispute and entitled Allied Bank to judgment as a matter of law:

1) Throughout the period for which Plaintiff seeks compensation for legal services rendered to Nora Eichorn, Ms. Eichorn had duly appointed, qualified, and acting Temporary Guardians of her Person and Estate. Plaintiff approved this Court's Agreed Order dated 2 September 1981 which appointed such Guardians.

2) The Temporary Guardian of the Person of Nora Eichorn and the Temporary Guardian of the Estate of Nora Eichorn did not authorize the services for which Plaintiff seeks compensation nor did they accept the benefits of such services on behalf of Nora Eichorn.

3) On 25 June 1982 when Plaintiff first sought court approval for the compensation for which she now sues, the Temporary Guardians of the Person and Estate of Nora Eichorn disaffirmed any contract for legal services between Plaintiff and Nora Eichorn.

The trial court entered judgment that Breaux take nothing by her suit.

Appellant raises eleven points of error. Under point of error one, Appellant argues that the trial court erred in granting Allied Bank's Motion for Summary Judgment "because Nora Eichorn Boswell was not a Permanent Ward without rights, but was a

Temporary Ward, who fully retained presumption of competence, all contract rights and all constitutional rights, including the right to an Attorney of her choice to defend those rights."

Appellant equates a temporary guardianship with a limited guardianship. Appellant argues that under a "limited guardianship" Eichorn retained the power to enter into the alleged contract. Effective September 1, 1983, four months after Eichorn died, the Probate Code was amended to allow limited guardianships for incapacitated persons. Under the limited guardianship procedure, an incapacitated person is not presumed to be incompetent and retains all legal and civil rights and powers except those granted to the limited guardian. TEX.PROB.CODE ANN. § 130A (Vernon Supp.1985). However, Eichorn was placed under a temporary guardianship and not a limited guardianship. The two procedures are separate and independent.

Appellant also argues that Eichorn's "legal presumption of general competence was never finally overcome by a final decree of incompetence." We agree that there has been no final adjudication of incompetence. However, a guardian may be appointed if the court finds that the person for whom a guardian is to be appointed is a person of unsound mind. TEX.PROB. CODE ANN. § 114 (Vernon Supp.1985). Since *Appellant* prepared the original application for guardianship, Appellant cannot now argue that the entire guardianship was improper because Eichorn was not a person of "unsound mind."

Appellant contends that Eichorn retained the legal presumption of competence to marry and "thus competence to retain counsel to defend her decision to remain in Houston and to marry." Whether Eichorn had the competence to marry is irrelevant; the issue is whether a ward may effectively contract for legal services while a temporary guardianship exists.

■ Eichorn was not a ward under a limited guardianship who retained all legal and civil rights and powers. TEX.PROB. CODE ANN. § 130A (Vernon Supp.1985).

She was placed under a temporary guardianship. The order which established that guardianship named Jim Boswell as temporary guardian of the person and estate of Nora Eichorn, N.C.M., with "the power to collect, conserve, protect, manage and maintain the assets belonging to the Ward...." The agreed order naming Allied Bank as temporary guardian of the estate gave Appellee the following powers:

1. To gather, collect, take possession of, preserve and protect all property or other assets of every kind, real, personal or mixed, belonging to the Ward;

2. To arrange for and to pay expenses necessary for the protection, maintenance, support and upkeep of the Ward and all property coming into possession of said Temporary Guardian;

3. To accept claims of creditors and approve or disapprove such claims as may be presented to such Guardian, and to classify any claims which may be approved.

With these powers, Appellee and not the ward had the power to contract for legal services. The ability to contract for legal services was incident to the other powers granted to Appellee. Eichorn no longer had the power to bind herself and her estate to pay Appellant's fees. There is nothing in the record to show Appellee requested any services from Appellant. The Second Restatement of Contracts provides "A person has no capacity to incur contractual duties if his property is under guardianship by reason of an adjudication of mental illness or defect." Restatement (Second) of Contracts § 13 (1981). The trial court was correct in concluding that the same rule applies to persons of unsound mind who are placed under the protection of a temporary guardianship of both the estate and person. Point of error one is overruled.

The second point of error is that the trial court erred in granting the summary judgment on the basis of the finding that Eic-

horn had duly appointed temporary guardians of her person and estate. Appellant argues there is no evidence to support such a finding. The order which originally named Appellee as temporary guardian of Eichorn's estate provided that the appointment "shall terminate on October 27, 1981 unless otherwise ordered by this Court." On January 5, 1982, the trial judge signed an order entitled "Order Extending Appointment of Temporary Guardian." That order provides that on the 27th day of October 1981, the court heard Appellee's application for extension of its appointment as temporary guardian of the Estate of Nora Eichorn, N.C.M. The trial court ordered that the original agreed orders appointing Appellee "be extended until otherwise ordered by this Court." Appellant argues "the order purporting to extend the appointment can only be an order making a new appointment." Appellant then concludes that Eichorn was left without "a Temporary Guardian of Estate, duly appointed 'by written order,' from termination on October 27, 1981, until the new appointment was made on January 5, 1982...."

■ We agree that appointments of temporary guardians are to be made by written orders. TEX.PROB.CODE ANN. § 131(a) (Vernon 1980). However, Appellee was originally appointed by a written order and the appointment was continued by a written order. Appellant has not established that the appointment had terminated. Point of error two is overruled.

■ The third point of error is that the finding that there were duly appointed temporary guardians "is immaterial as Nora Eichorn retained all her rights." As stated above, Allied Bank as temporary guardian had the power and duty to protect and collect Eichorn's assets. With that power Allied Bank, and not Eichorn, had the responsibility to hire attorneys to perform any needed legal work. During the pendency of the guardianship, any contract for legal services would have to be made with the guardian and not the ward. Point of error three is overruled.

■ Point of error four is that the finding that the temporary guardians did not authorize or accept Appellant's services on behalf of Eichorn is a disputed fact issue which precludes summary judgment. There are affidavits attached to the Motion for Summary Judgment in which both a representative of Allied Bank and Cenatiempo state that they have neither authorized nor accepted any legal services from Appellant. There is no evidence in the record that such legal services were authorized or accepted by the temporary guardians. Appellant has failed to establish that a material factual issue existed which would preclude the granting of the summary judgment. TEX.R.CIV.P. 166–A(c). Point of error four is overruled.

■ The fifth point of error is that the lack of authorization is immaterial because: 1) the temporary guardians ratified the contract by inaction, and 2) Nora Eichorn had all her rights, and she authorized and accepted the services. The record establishes that Appellee promptly opposed Appellant's application for payment of attorney's fees for representation of Eichorn. There is no evidence of ratification. There is no merit to Appellant's contention that the trial judge in any way authorized or accepted the legal services of Appellant. As stated above, while under the protection of the guardianship, Eichorn could not authorize or accept the legal services. Point of error five is overruled.

■ Point of error six attacks the finding that the temporary guardians of the estate and person disaffirmed the contract between Appellant and Eichorn. Point of error seven is that Appellee lacked the power to disaffirm. Appellant argues that the temporary guardians did not actually disaffirm but made an erroneous denial. Appellant does not dispute that a guardian may disaffirm a contract entered into by the ward. *See Knox v. Drews,* 202 S.W.2d 335 (Tex.Civ.App.—Austin 1947, writ dism'd). The act of disaffirmance must be distinct and unequivocal. *Hatton v. Bodan Lumber Co.,* 123 S.W. 163, 168 (Tex.Civ.

App.1909, writ ref'd). The trial court was correct in finding that the acts of Appellee were so distinct and unequivocal as to act as a disaffirmance of the contract. Appellee's Opposition to Application For Attorney's Fees served as a disaffirmance. Appellee had the power to disaffirm the contract allegedly made while the ward was under the guardianship. There is no legal support for Appellant's argument that the action of the trial court in abating the hearing of the application for payment served as an acceptance of the services. Points of error six and seven are overruled.

■ Point of error eight is that the contract for legal services was a contract for necessaries which could not be disaffirmed. We agree that the law creates an obligation to pay the reasonable value for necessaries furnished to a ward and those necessaries may include legal services. *Ferguson v. Fitze*, 173 S.W. 500 (Tex.Civ.App.—Galveston 1914, writ ref'd). Appellant has failed to show any of the alleged legal services rendered were "necessaries." Point of error eight is overruled.

■ The ninth point of error raises the issue of whether Appellant was entitled to compensation under a quantum meruit theory. Recovery under quantum meruit or a quasi-contract theory is based on equity. When seeking an equitable remedy, a party must do equity and come to the court with clean hands. *Houston Lighting and Power Co. v. Dickinson Independent School District*, 641 S.W.2d 302 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r. e.). Appellant did not "come to the court with clean hands." Appellant recovered from the estate for legal services rendered to James Boswell as temporary guardian. Then Appellant asserted that Eichorn and not Boswell was her client. Appellant knew the temporary guardians of the estate and person had been appointed. However, Appellant continued to provide services at the "request" of a person for whom *Appellant* had initiated temporary guardianship proceedings. Appellant was not en-

titled to any equitable relief. Point of error nine is overruled.

■ Point of error ten is that the summary judgment was improper because the original petition presented a suit on a sworn account and Appellee's original answer was an unsworn denial. If Appellant's suit was not filed in the form required by Rule 185, Appellee's answer was not required to conform to the rule. *Howard v. Weisberg*, 583 S.W.2d 920 (Tex.Civ. App.—Dallas 1979, no writ). An affidavit supporting a suit on a sworn account must state "that all just and lawful offsets, payments and credits have been allowed...." TEX.R.CIV.P. 185. Appellant's affidavit only contains the statement that "all lawful offsets, payments, and credits have been allowed." Since Appellant has failed to strictly comply with the requirements of Rule 185, Appellee's answer was not required to conform to the rule. Point of error ten is overruled.

■ Point of error eleven is that the trial court erred in failing to file separate *Findings of Fact and Conclusions of Law*. This is an appeal from the granting of a summary judgment. Findings of fact and conclusions of law have no place in a summary judgment proceeding. *State v. Easley*, 404 S.W.2d 296, 297 (Tex.1966); *Fulton v. Duhaime*, 525 S.W.2d 62, 64 (Tex. Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). The trial court was correct in not making findings of fact and conclusions of law. Point of error eleven is overruled.

The judgment is affirmed.