[No. 21746–1–I.  Division One.  December 12, 1988.]

UNITED PACIFIC INSURANCE COMPANY, *Appellant,* v.
WILLIAM F. BUCHANAN, ET AL, *Respondents.*

*Craig S. Sternberg, W. Jeffrey Davis,* and *Hatch & Leslie,* for appellant.

*John D. Blankinship* and *Montgomery, Purdue, Blankinship & Austin,* for respondents.

WEBSTER, J.—United Pacific Insurance Company (UPI), appeals a summary judgment dismissal of William F. Buchanan (William) as a party defendant. UPI asserts that the trial court erred when it found that William, an adjudicated incompetent, lacked capacity without representation by his appointed guardians to enter a bonding contract with UPI. We reverse and remand.

### FACTS

William suffered from chronic alcoholism accompanied by progressive memory loss and dementia. King County Superior Court adjudicated William incompetent on May 1, 1980. The court established a guardianship in his behalf, appointing William's son and daughter, John Buchanan and Leeann Farrell, as coguardians. William's condition at the time, as stated in a guardian ad litem's report, rendered him unable to care for himself. One counselor recommended that William be placed in an alcohol treatment facility. A doctor stated: "[W]e feel the patient will probably never be able to care for himself or meet his basic living needs without the help of some nursing facility."

After having the guardianship created, the coguardians took no further action for nearly 7 years. They did not inventory the estate, file annual reports, or seek court authorization to dispose of or incumber William's estate assets.

William received treatment in an alcohol center for the first 3 months of the guardianship. Upon his completion of the program, he lived on his own, maintained his own checking account, and drove his own car. William's son and coguardian admitted that he forgot about the guardianship shortly after William's release.

Within several months of completing the program William returned on a somewhat daily basis to his position at Coast Construction Company, Inc. (Coast). Coast, a general contracting firm, was created in the 1970's and is owned in equal thirds by William, his son and coguardian John, and John W. McKenna. The record indicates a rather sporadic

involvement by William in the corporation's affairs after the guardianship was established. William remained a signatory for the corporate checking account, signed corporate documents and held elected positions in the corporation, including officer and director.

Coast contracted to erect a building in Maryland in 1982 and required a general contractor's performance bond. Coast applied to UPI to obtain the appropriate bond. In its bond application process, UPI required personal financial statements from the principals of Coast. William completed a personal financial statement setting forth his personal assets and liabilities which included a 30–acre parcel of waterfront property on Anderson Island valued at $500,000. This statement neither disclosed the existence of the guardianship, nor did it contain signatures of the coguardians.

After examining the application documents, UPI agreed to provide the bond. UPI entered an agreement with Coast, and its principals, which entitled UPI to seek indemnification for payments it might make on the bond. John McKenna and John Buchanan signed the "Continuing Agreement of Indemnity" in both their personal capacities and on behalf of the corporation. William also signed the agreement in his individual capacity. Although his coguardian's signature appeared directly above his own, his coguardian did not sign on his behalf. Neither John, Leeann, nor William ever informed UPI of the guardianship. Moreover, nothing in the record indicates that UPI had any information or knowledge of the guardianship when it executed the bond agreement.

In 1983 Coast defaulted on the Maryland project requiring UPI to pay claims under the bond. UPI executed a "Collateral Agreement" on March 29, 1983, which essentially reaffirmed the indemnification obligations of the parties to the original agreement. Again, William signed in his individual capacity with his coguardian John's knowledge, who was also a party to the transaction. John did not

inform UPI of the guardianship during execution of either document, nor did he caution his ward, William, not to sign. At no time did either coguardian seek court approval of the contract entered into by their ward. UPI paid $117,237.84 in claims under the bond due to Coast's default on the Maryland project. Pursuant to the agreements, UPI sought indemnification from Coast as well as from the individuals who signed the Continuing Agreement of Indemnity, including William.

Meanwhile, William entered another transaction in 1983 without court approval or representation by his coguardians. William executed notes secured by a deed of trust on the Anderson Island property in favor of Peoples Bank. William defaulted on the notes and the Bank sought to foreclose on the island property. Neither coguardian executed the notes on William's behalf nor did they obtain court approval for the deed of trust. The coguardians did not raise the incompetency defense as in the present case. Instead, William's coguardian Leeann paid off the notes to prevent the foreclosure. In exchange, William executed a quitclaim deed of the property to her. Additionally, neither guardian sought court approval for the sale of the island property to Leeann.

UPI filed this suit in 1987 against William and other parties to the indemnification contract to recover the payments and interest on the bond. Leeann Farrell and John Buchanan as guardians of William moved for summary judgment to dismiss the claim against the ward. The coguardians asserted that William was incompetent and that since he executed the contract with UPI without his coguardians' representation, the contractual obligation was void. The trial court granted the guardian's motion for dismissal and denied UPI's motion for reconsideration.

## DISCUSSION

UPI contends first that the guardianship terminated upon William's completion of the alcohol program in

August of 1980. Additionally, UPI asserts that the guardianship estate should be equitably estopped from denying the ward's agreement to indemnify UPI.

The guardians assert that neither coguardian acted in a representative capacity on behalf of the ward with UPI. They cite RCW 11.88.140 which provides that the guardianship continues to exist until terminated by court order. They maintain that William, as an adjudicated incompetent, lacked the capacity to contract with UPI.

UPI responds that RCW 11.88.140(2)(b) allows termination of a guardianship when it is no longer necessary. UPI maintains that the guardianship is unnecessary because William regained his competency after he returned home from the alcohol program.

We are not persuaded by this argument. We conclude that retroactive termination of the guardianship at this time is inappropriate since there is no evidence conclusively establishing William's competency over the past 7 years. No evidence as to William's present mental condition has been submitted, and neither the trial court nor this court are in the position to review the guardianship proceedings.

We also refuse to dispose of this case on equitable principles because legal theories exist to redress UPI's claim.

Generally, after the adjudication of incompetency and appointment of a guardian, the guardian alone possesses the power to bind the ward's estate; the ward lacks capacity to incur contractual duties. Restatement (Second) of Contracts § 13 (1981). *See also Breaux v. Allied Bank,* 699 S.W.2d 599 (Tex. Ct. App. 1985). The Restatement recognizes an exception to this rule, however, in the comments to section 13. The exception states that the ward may be capable of managing her own property if the ward regains her reason or has a lucid interval and the guardianship is either terminated or abandoned. Restatement (Second) of Contracts § 13, comment *a* (1981).

This exception has ancient roots in American jurisprudence. If at the time of contracting,

there is in fact no actual and subsisting guardianship, but the same has been practically abandoned, and the person who had been under guardianship after such abandonment makes a deed at a time when he is in fact of sound mind, and the contract is fair, the deed will be enforced, though the guardian has not been discharged by any judicial action.

*Thorpe v. Hanscom,* 64 Minn. 201, 205, 66 N.W. 1, 3 (1896); *see also Feild v. Koonce,* 178 Ark. 862, 12 S.W.2d 772 (1929). Similarly, Williston states

even though the [ward] has a lucid interval or regains his reason while the guardianship still exists, a transaction with him is void. The contrary has, however, been held where the [ward] has regained his reason and the guardianship had been allowed to fall into disuse although not legally terminated.

(Footnote omitted.) 2 S. Williston, *Contracts* § 257 (3d ed. 1959).

We conclude that the above authorities express a rule that applies in Washington. We hold that an adjudicated incompetent ward may contractually bind guardianship assets if (1) the guardian substantially abandons the guardianship by dereliction of her duties; and (2) the ward is competent or at least experiences a lucid interval while contracting with a party who is unaware of the existence of the guardianship.

In the present case, the guardians failed to enforce or recognize the guardianship soon after they established it. The guardians permitted William to resume a practically normal life when he left the treatment facility. He returned to his position with Coast and received a salary. He continued to be elected as either director or officer of the corporation. His guardians allowed him to sign corporate documents including the Continuing Agreement of Indemnity without their representation. William completed several financial statements on his own prior to the transaction with UPI with no mention of the guardianship. On the financial statements given to UPI, William listed the Anderson Island Property worth $500,000 as his own asset.

He also indicated that he earned a salary of $33,800 from Coast in his position as director of the corporation. The coguardians did not assert incompetency as a defense to the ward's notes and deed of trust issued to Peoples Bank. At least one of the coguardians admits to having forgotten about the guardianship within a year after it was established. Finally, the coguardians made no inventory of the ward's assets nor did they perform annual accounting, both of which are duties required by statute. RCW 11.92.040(1), (2). Thus, the record contains ample evidence that the guardianship had been abandoned or was allowed to fall into disuse at the time of the transactions with UPI.

The record does not clearly establish that the ward was of sound mind or at least experienced a lucid interval when he executed the contract with UPI. The trial court made no findings as to William's capacity to understand the nature and character of the contract with UPI.

CR 56 permits granting of summary judgment only when the pleadings, affidavits, depositions and admissions on file demonstrate that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. All facts submitted and inferences must be considered in the light most favorable to the nonmoving party. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Ward v. Richards & Rossano, Inc., P.S.,* 51 Wn. App. 423, 754 P.2d 120, *review denied,* 111 Wn.2d 1019 (1988). There is no question that the guardians abandoned the guardianship shortly after its creation and that it remained abandoned during the time when Coast contracted with UPI. The record is clear that UPI had no knowledge of the guardianship when it contracted with William. However, the record is inconclusive as to William's capacity or ability to comprehend the contract. Therefore, a material issue of fact exists which prevents a summary judgment dismissal of William.

Having found that material issues of fact exist, we reverse and remand for determination of William's mental

capacity at the time he signed the Continuing Agreement of Indemnity and the Collateral Agreement.

SCHOLFIELD, C.J., and WILLIAMS, J., concur.

Reconsideration denied January 31, 1989.

Review denied by Supreme Court May 9, 1989.