[No. 23380-7-I. Division One. December 18, 1989.]

UNITED PACIFIC INSURANCE CO., *Appellant,* v. WILLIAM F. BUCHANAN, ET AL, *Defendants,* LEEANN FARRELL, ET AL, *Respondents.*

*Craig S. Sternberg, Jeff Davis,* and *Hatch & Leslie,* for appellant.

*John D. Blankinship* and *Montgomery Purdue Blankinship & Austin,* for respondents.

WINSOR, J.—United Pacific Insurance Company (UPI) appeals from an order of summary judgment dismissing its action against Leeann Farrell (Leeann) and her marital community. We affirm.

In May 1980, Leeann and her brother, John Buchanan (John), were appointed coguardians of William Buchanan's (Buchanan) person and estate. Buchanan, who is Leeann's

and John's father, had been found to be incompetent due to chronic alcoholism.

Buchanan subsequently completed alcoholism treatment. He then "lived on his own, maintained his own checking account, and drove his own car." *United Pac. Ins. Co. v. Buchanan,* 52 Wn. App. 836, 837, 765 P.2d 23 (1988), *review denied,* 112 Wn.2d 1018 (1989). John and Leeann evidently "forgot about the guardianship shortly after [Buchanan's] release" from treatment, and ceased or limited management of his affairs. *Buchanan,* 52 Wn. App. at 837.

Eventually Buchanan returned to work on a limited basis at Coast Construction Company, Inc. (Coast), a general contracting firm equally owned by Buchanan, John, and John McKenna (McKenna). After Buchanan's return, Coast sought a general contractor's performance bond from UPI. UPI issued the bond after John provided Buchanan's personal financial statement, and after Buchanan, John and McKenna agreed to personally indemnify UPI for payments it might make on the bond. No one advised UPI that Buchanan was under a guardianship. Leeann was unaware of the transaction.

Coast defaulted on the project for which UPI issued the bond, causing UPI to pay claims exceeding $120,000. UPI sought indemnification from Buchanan, John and McKenna, and in 1987 filed suit against those parties.

The trial court dismissed UPI's claim against Buchanan on the basis of his contractual incapacity. This court reversed, holding that

> an adjudicated incompetent ward may contractually bind guardianship assets if (1) the guardian substantially abandons the guardianship by dereliction of her duties; and (2) the ward is competent or at least experiences a lucid interval while contracting with a party who is unaware of the existence of the guardianship.

*Buchanan,* 52 Wn. App. at 841. The matter was remanded for a factual determination of whether part (2) of this test was satisfied here.

While its appeal of Buchanan's dismissal was pending, UPI amended its complaint to add Leeann as a codefendant. Leeann moved for summary judgment of dismissal. The trial court granted her motion. This appeal followed.

UPI first contends that dismissal was inappropriate because Leeann breached her duty to protect UPI from Buchanan.[1] UPI argues that guardians have a duty to protect third parties that is analogous to a parent's duty to protect third persons from a child's known problems. *Eldredge v. Kamp Kachess Youth Servs., Inc.,* 90 Wn.2d 402, 408, 583 P.2d 626 (1978). While UPI is correct that guardianship duties frequently correspond to parental duties, *e.g., State v. Waleczek,* 90 Wn.2d 746, 752–53, 585 P.2d 797 (1978); *Eldredge,* 90 Wn.2d at 408, that correlation is irrelevant here.

*Eldredge,* and the authorities it relies on, address a parent's duty to take reasonable measures to control a child's known dangerous proclivities and prevent the child from engaging in certain tortious behavior. 90 Wn.2d at 408. They do not address parental duties concerning the contracts of children.[2] In this area, parental duties are limited to reimbursing those who furnish their minor child with necessities, paying for goods shoplifted by their child, and paying for the child's food and lodging. RCW 4.24.230(2); *cf. Schmit v. Campbell,* 140 Wash. 376, 380, 249 P. 487 (1926). These limited duties are not tantamount to a general parental duty to prevent minor children from entering

---

[1]At oral argument, UPI suggested that Leeann acted fraudulently. This issue was not raised in the trial court, nor briefed on appeal. We therefore refuse to consider it. *E.g., In re Marriage of Williams,* 39 Wn. App. 224, 228, 692 P.2d 885 (1984), *review denied,* 103 Wn.2d 1020 (1985); RAP 2.5(a), 9.12, 10.3(a)(3).

[2]For the same reasons, UPI's attempt to analogize a guardian's duty to parties contracting with a ward, to a psychiatrist's duty to protect those who may be physically endangered by a patient, must also fail. *See Petersen v. State,* 100 Wn.2d 421, 671 P.2d 230 (1983).

into contracts, or to protect third parties with whom those children may illegally contract. UPI's reliance on a parental duty analogy is therefore misplaced.[3]

■ Moreover, UPI's position contradicts settled law. The Restatement (Second) of Contracts § 13, comment *a* (1981), provides:

> The reason for appointing a guardian of property is to preserve the property from being squandered or improvidently used. The guardianship proceedings are treated as giving public notice of the ward's incapacity and establish his status with respect to transactions during guardianship even though the other party to a particular transaction may have no knowledge or reason to know of the guardianship: *the guardian is not required to give personal notice to all persons who may deal with the ward.*

(Italics ours.) Similarly, it is stated in 39 C.J.S. *Guardian and Ward* § 174, at 348 (1976), that "[i]n general a suit or proceeding in which relief or recovery is sought against a ward does not lie against his guardian," *i.e.,* "the guardian cannot be sued personally for debts due solely from the ward." The reasoning employed in reaching this result is that a guardian's promise to reimburse a third party cannot be implied "since his duties and obligations ran to the [ward] and not to plaintiff." 39 C.J.S., *supra* at 348.

We hold that a guardian is not under a general duty to protect third parties who conduct business with a ward. Consequently, absent special circumstances not present here, no action can lie against a guardian for losses sustained by reason of the ward's contractual incapacity.

UPI next contends that Leeann, as William's coguardian, is liable "based upon John's adjudicated liability." This contention is without merit.

---

[3]In fact, a guardian's liability for a ward's contracts may not even be coextensive with the limited liability of a parent. One authority states that "in general, an action at law does not lie against the guardian personally to recover for necessaries furnished to the ward in the absence of any express contract or promise on the part of the guardian". 39 C.J.S. *Guardian and Ward* § 174, at 348 (1976).

In 1986, before this action was commenced, Leeann's coguardian, John, filed a chapter 7 bankruptcy. UPI initiated an adversary proceeding to prevent John from discharging his indemnity obligation for the bond payments. The bankruptcy court found that to obtain the UPI bond, John knowingly misrepresented his father's legal capacity to execute documents and to deliver the assets listed on his personal financial statement. The court concluded that John obtained credit from UPI "by false pretenses, a false representation or actual fraud, other than a statement respecting the Debtor's or an insider's financial condition." Accordingly, John's personal liability to UPI was excepted from discharge by section 523(a)(2)(A) of the bankruptcy code.

UPI contends that John's continuing personal liability on the indemnity agreement extends to his coguardian, Leeann. UPI relies on the rule that joint guardians are jointly responsible for their joint acts. *In re Estate & Guardianship of Johnson,* 78 Wyo. 173, 320 P.2d 429, 437, 72 A.L.R.2d 745 (1958); 39 C.J.S., *supra* at § 194.

■ That rule does not apply here. The acts for which John was held liable were not undertaken jointly with Leeann. Instead, they were separately undertaken in John's distinct capacity as Coast's president. Moreover, there is no evidence indicating Leeann had any knowledge of John's acts. Therefore, the more general rule, that even when parties serve as coguardians, they are separately answerable for their separate acts, governs here. 39 C.J.S., *supra* at § 194; *cf.* Annot., *Coexecutor's, Coadministrator's, or Cotrustee's Liability for Defaults or Wrongful Acts of Fiduciary in Handling Estate,* 65 A.L.R.2d 1019 (1959), *see generally American Sur. Co. v. McMullen,* 129 Conn. 575, 30 A.2d 564, 566 (1943) (an executor is not liable for coexecutor's conduct in doing something outside the scope of his duties); *In re Estate of Hagerty,* 105 Wash. 547, 556, 178 P. 644 (1919) (the general, if not universal, rule is that an administrator is not liable for the acts, defaults, or devastavits of

his coadministrators, unless he or she somehow aided, concurred in, or contributed to them).

We hold that the trial court properly dismissed Leeann and her marital community from UPI's suit. This holding makes it unnecessary to address UPI's remaining contentions.

The judgment is affirmed.

SCHOLFIELD, J., and AGID, J. Pro Tem., concur.