# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===

NO. 03-09-00580-CV

===

**Russell D. Daves, Appellant**

**v.**

**Michael J. Daniels, Appellee**

===

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
NO. D-1-GN-08-000006, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING**

===

## O P I N I O N

Appellant Russell D. Daves, an attorney, was hired by Carla Daniels to bring suit against her ex-husband, appellee Michael J. Daniels, to enforce the terms of the couple's divorce decree.[1] Carla had previously been declared incapacitated and had a guardian appointed to manage her affairs, but that guardian had been removed by the court before the present suit was filed. Michael filed a motion for Daves to show his authority to maintain Carla's suit and moved for sanctions against Daves under chapter 10 of the civil practice and remedies code for knowingly filing a lawsuit without authority. After a hearing, the trial court found that Carla lacked the capacity to hire Daves and that Daves knew or should have known that fact. The court dismissed Carla's suit and imposed monetary sanctions against Daves. Daves appeals the sanctions order, asserting in two

---

[1] Because Carla Daniels and Michael J. Daniels have the same last name, for clarity we will refer to them by their first names.

issues that (1) the trial court abused its discretion in awarding sanctions because Carla had the capacity to hire him, and (2) there was legally insufficient evidence to support the court's finding that Carla was legally incapacitated at the time she hired Daves. We will reverse the trial court's sanctions order.

## FACTUAL AND PROCEDURAL BACKGROUND

Carla was declared legally incapacitated in 2000; an order was signed appointing her father guardian of her person and her estate. Daves represented Carla's father in that proceeding. In 2001, Daves represented Carla's guardian, on her behalf, in her suit for divorce. In 2005, the court removed Carla's father as guardian because he failed to file the statutorily required periodic reports. *See* Tex. Prob. Code Ann. §§ 761(c)(2) (court may sua sponte remove guardian if he fails to file required reports), 743 (listing guardian's required reports) (West Supp. 2009). The court did not appoint a substitute guardian at that time.

In June 2007, Carla hired Daves to sue Michael to enforce the couple's divorce decree. Aware that Carla had previously been found to be legally incapacitated and that, after the 2005 removal of Carla's father as guardian, no other guardian had been appointed, Michael filed a motion pursuant to rule 12 of the Texas Rules of Civil Procedure requesting that Daves demonstrate his authority to represent Carla and file suit on her behalf. *See* Tex. R. Civ. P. 12 (on sworn motion of party, court may order attorney to show his authority to prosecute or defend suit). Michael also sought, as sanctions against Daves, the attorney's fees Michael had incurred in initiating a proceeding to appoint a successor guardian for Carla.

2

The trial court found that Carla had been declared incapacitated in 2000 and had not had her capacity restored since then. The court therefore concluded that she remained incapacitated and thus could not have legally entered into a fee agreement with Daves. The court also found that Daves had knowledge of Carla's incapacity due to Daves's past representation of her guardian in both the guardianship proceeding and Carla's divorce. The court dismissed Carla's suit and imposed sanctions against Daves for knowingly filing a suit without authority to do so, ordering him to pay Michael's attorney's fees for initiating the action to appoint a new guardian for Carla. Daves appeals.

**STANDARD OF REVIEW**

We review the trial court's imposition of sanctions for an abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). We review the entire record to determine whether the trial court abused its discretion. *American Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam). In deciding whether the trial court abused its discretion, "[a]n appellate court may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable." *Id.* (citing *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004)). When it comes to deciding what law applies or in applying that law to the facts of the case, however, the trial court has no discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (trial court's failure to correctly analyze or apply law constitutes abuse of discretion). In reviewing the imposition of sanctions, we must also ensure there is a nexus between the improper conduct and the sanction imposed. *Low*, 221 S.W.3d at 614. The

3

party seeking sanctions bears the burden of overcoming the presumption that pleadings and other papers are filed in good faith. *Id.*

Daves's appellate issues require us to construe the probate code; statutory construction is a question of law that we review de novo. *See F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007). Our objective in interpreting any statute is to determine legislative intent. *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). We look to the statute's plain meaning and construe it as a whole to give effect to every part, *see id.*, unless such a construction would lead to absurd or nonsensical results, *FKM P'ship, Ltd. v. Board of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 633 (Tex. 2008); *see also Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999) ("[I]t is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent."). We may consider the object of the statute, legislative history, and the consequences of a proposed construction. Tex. Gov't Code Ann. § 311.023(1), (3), (5) (West 2005).

## DISCUSSION

In his first issue, Daves asserts that the trial court erred in imposing sanctions because it erroneously concluded that Carla was legally incapacitated and, therefore, legally incapable of hiring an attorney. To determine whether Carla had capacity to hire Daves, we look to the order appointing a guardian on her behalf and to the relevant provisions of the probate code. *See generally* Gardner, et al., State Bar of Texas Guardianship Manual Committee, *Texas Guardianship Manual* § 4 (2d ed., 2006 Supp.) (describing process for appointing guardian and detailing probate code's mandatory language required in guardianship order). The guardianship order was rendered in

4

2000 by the Williamson County Court at Law. As required by subsection (a) of section 684 of the probate code, the court found by clear and convincing evidence that (1) Carla was an incapacitated person, (2) it was in Carla's best interest that the court appoint a guardian for her, and (3) her rights and property would be protected by the appointment of a guardian. *See* Tex. Prob. Code Ann. § 684(a) (West 2003).

In addition to those findings, to appoint a guardian, the probate code requires that the court find, by a preponderance of the evidence, either that (1) the proposed ward is totally without capacity to care for himself and manage his property, or (2) the proposed ward lacks the capacity to do some, but not all, of the tasks necessary to care for himself and manage his property. *Id.* § 684(b)(4); *see also id.* § 602 (West 2003) (describing policy and purpose of guardianship). The former finding supports a "full-authority" guardianship, and the latter a "limited" guardianship. *See id.* § 693(a)-(b) (West Supp. 2009). As the term suggests, a full-authority guardianship is a broad, general grant of powers and rights to the guardian "with full authority over the incapacitated person except as provided by law." *Id.* § 693(a). To create a full-authority guardianship, the court's order must specifically state "that the guardian has full authority over the incapacitated person." *Id.* § 693(a)(2). A limited guardianship, on the other hand, is created when the court grants only specific, limited powers to the guardian. *Id.* § 693(b). To create a limited guardianship, the court must specify in its order "the specific powers, limitations, or duties of the guardian with respect to the care of the person or the management of the person's property by the guardian." *Id.* § 693(b)(2). An incapacitated person retains all legal and civil rights and powers not specifically granted to the guardian. *Id.* § 675.

5

Here, in addition to those findings noted above, the court found that "[Carla] lacks the capacity to do some, but not all, of the tasks necessary to care for herself or to manage her property," a finding that would support a limited guardianship. *See id.* § 693(b). The court's order, however, did not list "the specific powers, limitations, or duties of the guardian with respect to the care of the person or the management of the person's property by the guardian" required to create a limited guardianship. Nor did it state "that the guardian has full authority over the incapacitated person," which arguably could have created a full-authority guardianship even in the face of a finding that her incapacity was not total. *See id.* § 693(a)-(b). After reciting the required findings of incapacity on Carla's part and suitability on the guardian's part, the order stated that

> IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED that the application of Hugh Mac Bain [Carla's father] be and is hereby GRANTED and Hugh Mac Bain is appointed guardian of the person and estate of Carla O. Daniels, and that letters of guardianship shall issue to Hugh Mac Bain upon filing good and sufficient surety bond in the sum of $450,000, conditioned as required by law, and taking the oath of office within 20 days from this date.

Thus, the court's order was silent as to which, if any, powers were being granted to Carla's guardian.[2]

Because the order here did not define the scope—either full or limited—of the guardian's powers and did not specify the powers granted, as required by the probate code,

---

[2] We note that while the order appoints her father "guardian of [Carla's] person and estate," such language is insufficient, by itself, to define the guardian's powers. *See* Tex. Prob. Code Ann. § 693 (West Supp. 2009). Although probate code section 693 requires that the guardianship order contain language describing whether the guardian is appointed to manage the ward's person, estate, or both, *see id.* § 693(c), such language is required *in addition* to a statement specifically defining the guardian's powers. *See id.* § 693(a)-(b).

6

section 675's presumption that a ward retains all powers not specifically granted to her guardian fills the void. In light of that presumption, and because the order here was not effective to vest any power in Carla's guardian, we conclude that Carla retained capacity to hire Daves to file suit on her behalf. Because she retained capacity to hire Daves, the trial court abused its discretion in imposing sanctions against Daves. *See Walker*, 827 S.W.2d at 840 (court has no discretion in applying law to facts).

Michael argues that, because Carla was previously deemed to be incapacitated and no court subsequently found that she had regained her capacity, the presumption of incapacity remains in effect. Operating under that presumption, Michael argues, the trial court did not err in imposing sanctions.

Although Michael is correct that the 2000 trial court order found Carla to be an incapacitated person, a general finding of incapacity does not show that Carla lacked the power to hire counsel. An "incapacitated person" is defined by the probate code as follows, in pertinent part:

> an adult individual who, because of a physical or mental condition, is substantially unable to provide food, clothing, or shelter for himself or herself, to care for the individual's own physical health, or to manage the individual's own financial affairs.

Tex. Prob. Code Ann. § 601(14)(B) (West Supp. 2009). As the plain language of that definition indicates, a finding of incapacity may be based on an inability to manage one's food, clothing, shelter, health, or finances, or—importantly—an inability to do one, some, or any combination of those things. It does not follow, therefore, that a general finding that Carla was an incapacitated

7

person, without more, means that she specifically lacked the capacity to hire counsel and prosecute a lawsuit.

Michael asserts that *Breaux v. Allied Bank of Texas*, 699 S.W.2d 599 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.), is dispositive here. In that case, Breaux, a lawyer, represented the guardian in a temporary guardianship of Breaux's estate-planning client after the client had a stroke. *Id.* at 601. During the guardianship, Breaux represented the ward in other legal matters without the knowledge and consent of the guardian. *Id.* After *Breaux* presented her bill to the guardian for those matters, the guardian declined payment on the grounds that the ward did not have capacity to contract with Breaux during her incapacity. *Id.* The court of appeals agreed, holding that "[s]ince *Appellant* prepared the original application for guardianship, Appellant cannot now argue that the entire guardianship was improper because [the ward] was not a person of 'unsound mind.'" *Id.* at 602 (emphasis in original).

*Breaux* is distinguishable for at least two reasons. First, it was decided under an older, substantially different probate code, which lacked many of the required findings, procedures, and presumptions that operate here. *See generally* A. Frank Johns, *Ten Years After: Where is the Constitutional Crisis with Procedural Safegaurds and Due Process in Guardianship Adjudication?*, 7 Elder L.J. 33, 79-81 (1999) (detailing extensive 1993 amendments to Texas Probate Code). Second, unlike the guardianship order in the present case, the order in *Breaux* was specific in detailing the powers granted to the guardian, among which was complete authority over the property rights of the ward, which the court held included the right to contract for legal services. *Breaux*, 699 S.W.2d at 602.

Michael emphasizes that the lawyer in *Breaux*, like Daves here, also represented the guardian in the guardianship proceeding and was therefore, in essence, estopped from later claiming that the ward had capacity. Although Daves had represented Carla's father in the earlier guardianship proceeding and thus knew that she was at least partially incapacitated, the probate code's presumption that Carla retained the powers and rights not specifically delegated to her guardian controls in light of the incomplete guardianship order in the present case. That is not to say, of course, that we do not recognize the paradox of the result here, or that we are not motivated by the same concerns of fairness as the *Breaux* court. But we are bound by the probate code. The trial court based its sanctions order on Carla's purported lack of capacity. Because we conclude that, under the probate code, it has not been shown that she lacked capacity to hire Daves, the sanctions order cannot stand.

Michael also argues that "by not challenging the trial court's ruling on [Michael's] Motion for Attorney to Show Authority, [Daves] waived his right to complain about the [sanctions order]." Michael contends that because Daves filed a motion to reconsider the sanctions order but not the dismissal order, he "has failed to properly preserve any error for this Court's review and waived any complaint regarding [certain findings contained in the dismissal order.]" We disagree. The trial court's sanctions order clearly recites its reasoning and conclusions for imposing sanctions on Daves. Also, we review the entire record to determine whether a trial court abused its discretion in imposing sanctions. *Jones*, 192 S.W.3d at 583. Thus, we necessarily look to the dismissal order, as well as to the rest of the record, to determine if sanctions were an abuse of discretion. Daves's

9

failure to object to the dismissal order does not mean that he has waived his right to appeal the sanctions order.

Finally, Michael argues that we must overrule Daves's issues here because he only challenged one of the bases on which the court based its sanctions order—chapter 10 of the civil practice and remedies code—and neglected to argue that it was error to impose sanctions pursuant to the court's inherent authority. We disagree. Daves's arguments that the court erred in imposing sanctions were addressed to the order in its entirety. He argued that the court's findings and conclusions were contrary to the probate code. As his arguments were directed at the conclusions underpinning the order, they encompassed both bases for the court's sanctions order.

For the reasons discussed above, we sustain Daves's first issue. Having sustained his first issue, we need not reach his second.

## CONCLUSION

Because the trial court abused its discretion in imposing sanctions against Daves, we reverse the order imposing sanctions against him and render judgment that Michael's motion for sanctions be denied.[3]

---

[3] Because the trial court's dismissal order was not appealed, we reverse only the sanctions order and do not remand the cause for further proceedings.

10

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Reversed and Rendered

Filed:   August 25, 2010