COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| WC 4TH AND RIO GRANDE, LP, | § | No. 08-22-00073-CV |
| Appellant, | § | Appeal from the |
| v. | § | 345th Judicial District Court |
| LA ZONA RIO, LLC, | § | of Travis County, Texas |
| Appellee. | § | (TC#D-1-GN-20-007177) |

## SUBSTITUTE MEMORANDUM OPINION

Appellant's motion for rehearing is denied. However, we withdraw our opinion dated May 25, 2023, and issue this opinion in its place.[1] We do the same with regard to our previously issued opinion in a companion case, which is similarly styled, in Cause No. 08-22-00225-CV.

Here, Appellant WC 4th and Rio Grande, LP (Rio Grande, LP) sued Appellee La Zona Rio, LLC (La Zona Rio) in a Travis County district court seeking to avoid foreclosure on a promissory note La Zona Rio held on a building Rio Grande, LP owned (the La Zona Rio Lawsuit). The parties agree that while the La Zona Rio Lawsuit was pending, a Harris County district court appointed attorney Seth Kretzer (Kretzer) to collect on a judgment owed by World Class Capital

---

[1] Two of the original panel members are divided on granting the motion for rehearing, and the third member is no longer able to participate in the case. Pursuant to TEX. R. APP. P. 49.3, Chief Justice Alley appointed himself as the third member of the panel and voted to deny the motion for rehearing and join the substituted panel opinion.

Group, LLC (WCCG) and Great Value Storage, LLC (GVS) to Princeton Capital Corporation (Princeton) in an unrelated lawsuit (the Princeton Lawsuit). Kretzer then entered an appearance in the La Zona Rio Lawsuit stating he was "appear[ing] as counsel of record" for WCCG and its "subsidiary," Rio Grande, LP and "hereby replace[d] prior counsel of record for WC 4th and Rio Grande, LP." Kretzer then entered into a settlement agreement with La Zona Rio that ultimately allowed Kretzer to deed the building to La Zona Rio in lieu of foreclosure for the sum of $10. That same day, La Zona Rio's attorney and Kretzer, again purporting to act on behalf of Rio Grande, LP, filed a joint motion to dismiss the La Zona Rio Lawsuit with prejudice pursuant to the agreement. Rio Grande, LP objected, contending Kretzer lacked the authority to act on its behalf, but the trial court granted the joint motion to dismiss without ruling on Rio Grande, LP's objection. Thereafter, Rio Grande, LP filed a motion to reinstate and/or for a new trial, which was overruled by operation of law. Rio Grande, LP appealed, again contending that Kretzer lacked the authority to act on its behalf.[2] Because the trial court allowed Kretzer to act on Rio Grande, LP's behalf without determining if he had the authority to do so, we reverse the trial court's judgment and remand for further proceedings to consider this issue.

## FACTUAL BACKGROUND

### A. Rio Grande, LP's breach of contract claim against La Zona Rio

The La Zona Rio Lawsuit stems from a $4.25 million loan Rio Grande, LP obtained from La Zona Rio's predecessor-in-interest in July 2014. The loan terms were reflected in a promissory note, which was secured by a building owned by Rio Grande, LP at the corner of West 4th Street and Rio Grande Street in downtown Austin (the Building). Significant to this appeal, local real

---

[2] This case was transferred from our sister court in Austin. We decide it in accordance with the precedent of that court to the extent required by TEX. R. APP. P. 41.3.

estate developer Natin Paul (Paul) signed the promissory note on behalf of Rio Grande, LP as the president of WC 4th and Rio Grande GP, LLC—Rio Grande, LP's general partner. After Rio Grande, LP defaulted on the note, La Zona Rio initiated foreclosure proceedings. Rio Grande, LP attempted to pay off the amount owed on the note, but La Zona Rio rebuffed its attempts. Rio Grande, LP then filed a lawsuit in a Travis County district court claiming La Zona Rio was in breach of contract and further seeking a declaratory judgment regarding its right to pay off the note under the parties' loan agreement.

## B. The Harris County district court's receivership order

Kretzer based his authority to act on Rio Grande, LP's behalf in the La Zona Rio Lawsuit on his status as the receiver in the Princeton Lawsuit. The background facts leading to his appointment as receiver are set forth in our sister court's opinion in *Great Value Storage, LLC v. Princeton Capital Corp.*, No. 01-21-00284-CV, 2023 WL 3010773, at *1 (Tex. App.—Houston [1st Dist.] Apr. 20, 2023, pet. granted) *review granted, opinion vacated as moot* (March 8, 2024) (judgment only).[3] Below are the salient facts from that opinion and the record before us.

In July 2012, GVS and WCCG entered into a Note Purchase Agreement (NPA) with Capital Point Partners II, L.P. (Capital Point), the predecessor-in-interest to Princeton. *Id.* at *1. Natin Paul was the sole member and manager of both WCCG and GVS. *Id.* Under the NPA, GVS

---

[3] The Texas Supreme Court recently concluded, pursuant to Texas Rules of Appellate Procedure 56.2 and 60.6, that the appeal in *Great Value Storage* was moot and ruled as follows: "Without hearing oral argument or considering the merits, the Court grants the petition for review, dismisses the case as moot, and vacates the judgment and opinion of the court of appeals." When the court vacates an opinion of the court of appeals as moot, without hearing the merits, the court removes the opinion's binding precedential nature. *See Morath v. Lewis,* 601 S.W.3d 785, 791–92 (Tex. 2020). However, it does not strike it from court reporters or foreclose us from relying on the facts set forth therein. *Id.* (recognizing that the practical effect of the Supreme Court's use of the term, "vacated" in reference to an appellate court opinion is to "eliminate[] any binding precedential effect it may have," but it does not "eliminate altogether 'the public nature of the court of appeals opinion.'").

executed two promissory notes in favor of Capital Point "in exchange for money." *Id.* In March 2015, Princeton purchased the NPA together with the promissory notes issued pursuant to the NPA. *Id.* at *2. In October 2018, Princeton sent WCCG and GVS a default notice. When they failed to correct the deficiency on the notes, Princeton filed a lawsuit against them in a Harris County district court, alleging, among other claims, breach of contract. *Id.* In March 2021, the trial court entered a final judgment granting summary judgment in Princeton's favor on its breach-of-contract claim and awarded Princeton over $9.7 million in damages representing the principal and interest owed on the notes. *Id.* at *6.

In June 2021, Princeton filed a motion for a post-judgment receivership under Texas Civil Practice and Remedies Code Chapters 31 and 64 to collect on the judgment. *Id.* at *6. Princeton asserted that WCCG and GVS had refused to participate in discovery throughout the course of the litigation and had refused to produce requested information regarding their assets. *Id.* Relying on both companies' websites, Princeton argued that WCCG and GVS had nonexempt assets that could be used to satisfy the judgment. *Id.* The trial court granted Princeton's motion and issued a receivership order appointing Kretzer as the receiver to assist it with collecting on the judgment pursuant to the Texas Turnover Statute.[4] *Id.*

The order gave Kretzer broad powers to assist Princeton in its collection efforts (the Receivership Order). Among other things, the order directed WCCG "to identify and turn over to [Kretzer] all interests of [WCCG] in any business or venture, including limited liability companies and limited partnerships." The Receivership Order then broadly authorized Kretzer "to seize the

---

[4] As discussed in more detail below, the Texas Turnover Statute, found in § 31.002 of the Texas Civil Practice & Remedies Code, "provides judgment creditors with a procedural device to assist them in satisfying their judgment debts." *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540 S.W.3d 577, 581 (Tex. 2018) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 31.002). As part of this aid, the court may "appoint a receiver with the authority to take possession of the [debtor's] nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment." *Id.* § 31.002(b)(3).

membership interest of any Limited Liability Company in which [WCCG] is a member" and "to sell, manage, and operate the Limited Liability Company as the Receiver shall think appropriate." The Receivership Order further provided that Kretzer was entitled to a fee of 25% of all gross proceeds coming into his possession not to exceed 25% of the balance due on the judgment. The First Court of Appeals temporarily stayed the Receivership Order sometime in October 2021 to provide the judgment debtors the opportunity to post a supersedeas bond, but the stay was lifted on November 18, 2021.

C. **Kretzer's notice of appearance in the La Zona Rio Lawsuit and the motion to dismiss**

At 5:06 p.m. on November 18, 2021, the same day the stay was lifted, Kretzer filed a "Receiver's Notice of Appearance" in the La Zona Rio Lawsuit in Travis County, asserting he was the "court-appointed Receiver for World Class Capital Group, LLC," and was appearing "as counsel for record of World Class Capital Group, LLC and its subsidiary WC 4th and Rio Grande, L.P."[5] The notice stated that Kretzer, who was represented by attorney James Volberding, "hereby replaces prior counsel of record for WC 4th and Rio Grande, L.P."[6] Later that day, at 6:51 p.m., a "Joint Motion to Dismiss with Prejudice" was filed, stating the "parties have resolved all claims

---

[5] In its appellate briefing, Rio Grande, LP contends that the stay was still in place when Kretzer entered his appearance in the lawsuit. However, given the timing as delineated above, we conclude that this contention is without merit.

[6] In moving to substitute as counsel of record, neither Kretzer nor Volberding followed the procedures set forth in Texas Rules of Civil Procedure 8 and 10. *See* TEX. R. CIV. P. 8 (once an attorney in charge is designated for a party, that attorney remains "responsible for the suit as to such party" "until such designation is changed by written notice to the court and all other parties in accordance with Rule 21a"); TEX. R. CIV. P. 10 ("[a]n attorney may withdraw from representing a party only upon written motion for good cause shown," and "[i]f another attorney is to be substituted as attorney for the party, the motion shall state: the name, address, telephone number, telecopier number, if any, and State Bar of Texas identification number of the substitute attorney; *that the party approves the substitution*; and that the withdrawal is not sought for delay only") (emphasis added).

asserted in this case and therefore request that the Court enter an order dismissing with prejudice all claims asserted in this case."[7]

### D. Rio Grande, LP's motion challenging Kretzer's authority

Less than a week later, on November 24, 2021, Rio Grande, LP, through its retained attorney, Brian Elliott, objected to Kretzer's authority by filing a document entitled, "WC 4th and Rio Grande, LP's Sworn Motion to Show Authority of Kretzer & Voldberding [sic] . . . to Represent World Class Capital Group, LLC and WC 4th and Rio Grande, L.P., Motion to Vacate Seth Kretzer's Actions for Lack of Standing or Capacity, and Motion for Rule 13 Sanctions."[8] In its motion, Rio Grande, LP conceded that Kretzer had been appointed as a receiver in the Princeton Lawsuit and attached a copy of the Receivership Order to its motion. However, Rio Grande, LP made two broad arguments contesting Kretzer's authority to intervene in the lawsuit. First, Rio Grande, LP pointed out that in Kretzer's notice, he claimed to have authority to act as Rio Grande, LP's attorney based on the allegation that Rio Grande LP was a "subsidiary" of WCCG, yet Kretzer provided no evidence regarding Rio Grande LP's status as such. And Rio Grande, LP denied it was a subsidiary of WCCG, asserting it was a separate legal entity that was neither owned nor managed by WCCG.

---

[7]On November 18, 2021, when the Joint Motion to Dismiss was filed—approved only by La Zona Rio's counsel and Kretzer and his attorney—Rio Grande, LP had other counsel of record: Rogge Dunn Group, PC and Baker Botts, L.L.P. Rogge Dunn had filed a motion to withdraw on November 5, 2021, which was still pending when the Joint Motion to Dismiss was filed. And Baker Botts LLP filed an amended motion to withdraw on December 1, 2021, drawing the trial court's attention to the dispute over who represented Rio Grande, LP. It stated that Brian Elliot of Scale LLP had been representing Rio Grande, LP, but that Kretzer filed a notice of appearance that Elliot had challenged. Baker Botts pointed out that "these motions remain pending." Following a hearing on December 7, 2021, the trial court granted both law firms' motions to withdraw. And as we note, 13 days later, the trial court, without expressly resolving the dispute over who represented Rio Grande, LP, granted the "agreed" motion to dismiss.

[8] As discussed in more detail below, although the motion stated it was a "sworn" Rule 12 motion, no verification was attached to the motion.

Second, Rio Grande, LP acknowledged that the Receivership Order ostensibly allowed Kretzer to seize the membership interest of any limited liability company or limited partnership in which WCCG was a member and to sell, manage, and operate any such limited liability company in which WCCG was a member as the receiver deemed appropriate. However, Rio Grande, LP asserted that Kretzer had failed to establish that WCCG did in fact have any such membership interest in either the LLC serving as the general partner or in the LP itself. In addition, Rio Grande, LP argued that even if WCCG had a membership interest in Rio Grande, LP, Kretzer would not be permitted to seize any assets belonging to Rio Grande, LP because under Texas law, partnership assets belong to the partnership, and a charging order is the exclusive remedy by which to collect on a judgment debtor's interest in a partnership or limited liability company.[9]

Finally, Rio Grande, LP sought Rule 13 sanctions against Kretzer and his attorney, contending they were both experienced attorneys who knew or should have known they lacked the authority to sign the pleadings in this matter as Rio Grande, LP's counsel, and their actions were therefore in "bad faith."[10] Neither Kretzer nor La Zona Rio filed a response to the motion.

**E.    The trial court's dismissal of the lawsuit and Rio Grande, LP's motion to reinstate**

---

[9] A charging order charges "the partnership interest of the judgment debtor to satisfy the judgment" by giving a judgment creditor "the right to receive any distribution to which the judgment debtor would otherwise be entitled in respect of the partnership interest." TEX. BUS. ORGS. CODE ANN. § 153.256(a), (b). A charging order constitutes a lien on the judgment debtor's partnership interest, but the judgment creditor has no right to foreclose on the lien. *Id.* § 153.256(c). Importantly, a charging order does not entitle a creditor to participate in the partnership or compel distribution of profits. *Pajooh v. Royal West Invs., LLC*, 518 S.W.3d 557, 563 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Stanley v. Reef Secs., Inc.*, 314 S.W.3d 659, 664–65 (Tex. App.—Dallas 2017, no pet.)). However, a Chapter 31 turnover and receivership order may be used to monitor partnership distributions and effectuate a charging order. *Id.*

[10] Rio Grande, LP also attached a copy of a letter dated November 22, 2021, from Kretzer to Brian Elliott, Rio Grande, LP's attorney at the time. The letter advised Elliott to take no further action in the proceeding without Kretzer's permission.

On December 20, 2021, the trial court signed an "agreed final order" granting Kretzer and La Zona Rio's joint motion to dismiss the La Zona Rio Lawsuit with prejudice, dismissing all of Rio Grande, LP's claims, and labeling its order a final judgment. The order was signed by Kretzer on behalf of Rio Grande, LP, stating that he was not only serving as Rio Grande, LP's attorney, but as the Princeton receiver and the "corporate owner of Defendant WC4th and Rio Grande, LP." The order was also signed by Volberding, as Kretzer's counsel.

On January 19, 2022, Rio Grande, LP, through its attorney Brent Perry (Rio Grande LP's counsel on appeal) filed a "Motion to Reinstate, or in the Alternative, for New Trial," again challenging Kretzer's authority to act on its behalf in the lawsuit. In the motion, Rio Grande, LP argued that Kretzer had no authority to seize the assets of the partnership or otherwise participate in its management, as WCCG did not "own or control" Rio Grande, LP. In support thereof, Rio Grande, LP filed a declaration from Paul asserting that he is the "governing person for WC 4th and Rio Grande GP, LLC, the general partner of WC 4th and Rio Grande, LP." He averred that "World Class Capital Group, LLC is not an owner of WC 4th and Rio Grande, LP" and that neither WC 4th and Rio Grande GP, LLC (the general partner of Rio Grande, LP) nor Rio Grande, LP had authorized Kretzer to act on the partnership's behalf. Rio Grande, LP also attached a copy of its 2021 "Texas Franchise Tax Public Information Report" indicating the partnership had three other limited partners, two of which had more than a 10% share in the partnership: Sangreal Investments II, LLC and Flash Property Management, LLC, each of which was listed as having a 33.75% interest in the partnership. Rio Grande, LP also attached the promissory note on which Rio Grande, LP had defaulted, together with various related financial documents, all of which listed Rio Grande, LP as the borrower on the note, and all of which were signed by Paul on behalf of Rio Grande, LP in his capacity as the president of WC 4th and Rio Grande GP, LLC—

8

Rio Grande, LP's general partner. And finally, Rio Grande, LP attached a copy of a warranty deed Kretzer signed after the trial court dismissed the La Zona Rio Lawsuit conveying the Building to La Zona Rio pursuant to the settlement agreement he had negotiated on Rio Grande, LP's behalf.[11] The deed listed the "Grantor" as follows:

WC 4th [Rio Grande, LP] a Texas Limited Partnership,
- By WC 4th and Rio Grande GP, LLC, its General Partner
- By World Class Real Estate, its Manager
- By WCCG, its Manager
- By Seth Kretzer, "as Court-Appointed Receiver for the property of World Class Capital Group, LLC, pursuant to the court order entered in Cause No. 2019-18855 of the 165th District Court of Harris County, Texas"

The deed further indicated the transfer was "in lieu of foreclosure" and in consideration of $10.

Neither Kretzer nor La Zona Rio filed a response to the motion to reinstate, and the trial court did not rule on the motion. After the motion was overruled by operation of law, Rio Grande, LP appealed the trial court's order dismissing the lawsuit, contesting Kretzer's authority to enforce the Receivership Order against it by seizing control of its lawsuit.

### F. The First Court of Appeals' opinion upholding the appointment of a receiver

While Rio Grande, LP's appeal was pending in our Court, so too was WCCG's appeal from the Harris County district court's order appointing a receiver in the Princeton Lawsuit. On appeal, in addition to generally challenging Kretzer's appointment as receiver, WCCG argued, among other things, the trial court abused its discretion by authorizing Kretzer to (a) seize the membership interest of any limited liability company or limited partnership in which it was a member, and (b)

---

[11] The question of whether Kretzer had the authority to sign the warranty deed on Rio Grande, LP's behalf is the subject of a second lawsuit that Rio Grande, LP filed against La Zona Rio, through its attorney Brent Perry, in which Rio Grande, LP brought claims to quiet title and for trespass to try title, and further sought a declaratory judgment that Kretzer did not have the authority to sign the deed. The trial court dismissed that lawsuit, and Rio Grande LP appealed in Cause No. 08-22-00225-CV, raising similar arguments challenging Kretzer's authority to act on its behalf. We issue a separate opinion in that cause number.

9

sell, manage, and operate any such limited liability company as the receiver deems appropriate. *Great Value Storage, LLC,* 2023 WL 3010773, at *15. In its opinion, the First Court of Appeals held that the trial court had properly appointed a receiver to collect on the Princeton Judgment. *Id.* at 19. However, the court concluded that WCCG had failed to preserve error on the two arguments above, as these specific arguments were not presented to the trial court for review. *Id.* at 15. After the First Court of Appeals denied WCCG's motion for rehearing, WCCG filed a petition for discretionary review with the Texas Supreme Court. In its petition, WCCG renewed its arguments regarding the trial court's lack of authority to allow Kretzer to seize assets and/or management of any LLCs or partnerships in which WCCG had an interest. WCCG further argued it did not waive its right to raise this specific argument challenging the receivership order, contending it preserved the issue by objecting to "Princeton's proposed form of receiver order as being grossly overbroad [and] not authorized by section 32.001 [sic]." Kretzer responded to the petition by arguing it was moot because the Princeton Judgment had been satisfied, he had been fully paid, and the trial court had discharged him from his duties as receiver. And as discussed above, the Texas Supreme Court recently determined that the case was moot and vacated the court of appeals' decision.[12]

## KRETZER'S MOTION TO DISMISS THE APPEAL

Prior to addressing the merits of Rio Grande, LP's argument that Kretzer lacked the authority to act on its behalf in the La Zona Rio Lawsuit, we first consider Kretzer's motion to dismiss the appeal. In that motion, Kretzer argued that Rio Grande, LP had no authority to file the appeal, contending the appeal was in effect filed by Natin Paul. Kretzer characterized the appeal

---

[12] Unlike the Harris County receivership appeal, the issues in this case do not turn on whether Kretzer was properly appointed or whether the Receivership Order was overly broad. Instead, they turn on whether Kretzer had the authority to act on Rio Grande, LP's behalf in the La Zona Rio Litigation under the terms of that order. We therefore find that the Texas Supreme Court's judgment (dismissing the receivership appeal as moot and vacating the judgment and the opinion of the court of appeals) does not directly impact our analysis.

10

as part of Paul's ongoing attempt to delay secured creditors' efforts to obtain and collect on judgments against his various World Class entities. In addition, Kretzer argued that because he assumed control of Rio Grande, LP's lawsuit pursuant to the Receivership Order, he alone had authority to act on Rio Grande, LP's behalf and Paul was required to obtain Kretzer's permission before filing this appeal. And in turn, Kretzer argues this appeal should be dismissed because Paul did not seek his permission.

Kretzer's argument, however, puts the cart before the horse, and assumes the Receivership Order properly granted him the authority to act on Rio Grande, LP's behalf in settling the La Zona Rio Lawsuit—which is the very subject of Rio Grande, LP's appeal. Accordingly, we carried Kretzer's motion to dismiss to allow us to resolve it at the same time as the appeal. And given our disposition of this appeal, we deny Kretzer's motion as moot.

## THE LACK OF A SWORN RULE 12 MOTION

We next consider a procedural argument raised by La Zona Rio in its motion for rehearing in which it argues we should affirm the trial court's decision based solely on the fact that Rio Grande, LP's motion to show authority was not sworn, as required by Rule 12.[13] In support of its argument, La Zona Rio cites *Watson v. City of San Marcos*, No. 03-22-00307-CV, 2023 WL 3010938, at *2 (Tex. App.—Austin Apr. 20, 2023, pet. denied) (mem. op.), in which the court held that a trial court was entitled to deny a Rule 12 motion because the motion was not sworn as

---

[13] La Zona Rio raised this issue in the trial court but then assumed throughout its appellate briefing that Rio Grande, LP filed a valid Rule 12 motion, and did not raise the question of whether the trial court could have denied the motion on that ground alone. Nevertheless, we will still consider the issue at this late stage in the proceedings because La Zona Rio, as the successful party in the trial court, was not required to raise all of its arguments—either in the trial court or in its appellate briefing—and could therefore direct our attention to a new basis for upholding the trial court's order for the first time on rehearing. *See In re G.X.H.*, 627 S.W.3d 288, 295 (Tex. 2021) (citing *Gilbert Texas Construction, L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex. 2010) (recognizing that prevailing party's complaint was not waived, despite not raising it in its appellate briefing, and could be raised for the first time in a motion for rehearing or a petition for review)).

required by Rule 12. Although we agree with La Zona Rio that a Rule 12 motion must be sworn, we conclude that Rio Grande's motion was not properly labeled as falling within the purview of Rule 12.

Rule 12 provides that "[a] party in a suit or proceeding pending in a court of this state may, by sworn written motion stating that he believes the suit or proceeding is being prosecuted or defended without authority, cause the attorney to be cited to appear before the court and show his authority to act." TEX. R. CIV. P. 12. The purpose of Rule 12 is to allow a party to challenge the right of an attorney to represent the *other party* in the litigation. *See* TEX. R. CIV. P. 12 ("At the hearing on the motion, the burden of proof shall be upon the challenged attorney to show sufficient authority to prosecute or defend the suit on behalf of the other party."); *see also In re Sassin*, 511 S.W.3d 121, 125 (Tex. App.—El Paso 2014, orig. proceeding) (recognizing that Rule 12's "primary purpose is to enforce a party's right to know who authorized the suit"). Here, Rio Grande, LP's motion did not challenge Kretzer's authority to represent *another party* in the La Zona Rio litigation; instead, it challenged Kretzer's authority to enter an appearance on behalf of *Rio Grande, LP* itself in the litigation.[14] Moreover, Rio Grande, LP was not only challenging Kretzer's right to act as its attorney but challenging whether the Receivership Order gave Kretzer the right to act on behalf of the partnership and make decisions on its behalf in the case. And Rio Grande, LP made the basis of its challenge to Kretzer's authority clear in its motion to reinstate the lawsuit when it again argued the Receivership Order did not give Kretzer the authority to act on its behalf in the litigation.

---

[14] La Zona Rio acknowledges that the motion challenged Kretzer's authority to act under the guise of the Receivership Order and contends the trial court made implied findings that Kretzer had the authority to take the "challenged actions" when it granted the joint motion to dismiss the lawsuit.

In interpreting the nature of a motion or other pleading, we look to its "substance, not merely at the form of title given to it." *Texas Med. Res., LLP v. Molina Healthcare of Texas, Inc.*, 659 S.W.3d 424, 441 (Tex. 2023) (recognizing that "[t]he title of a pleading or motion does not affect a court's subject-matter jurisdiction to decide the issues raised in it"); *see also* TEX. R. CIV. P. 71 ("When a party has mistakenly designated any plea or pleading, the court, if justice so requires, shall treat the plea or pleading as if it had been properly designated."). Given the substance of Rio Grande, LP's arguments that Kretzer lacked the authority he claimed to have under the Receivership Order to act on its behalf in the La Zona Rio Lawsuit, we decline to treat it as a Rule 12 motion.

On appeal, Rio Grande, LP raises the same issues it raised in its objection to Kretzer's authority to act on its behalf and in its motion to reinstate in the trial court. We therefore conclude that those issues were properly preserved for our review. *See* TEX. R. APP. P. 33.1(a)(1), (a)(2)(A), (b) (requiring timely, specific complaint to trial court and express or implied ruling for preserving error on appeal; civil case motion for new trial overruling by operation of law preserves complaint properly made in motion). We therefore turn to consider the merits of Rio Grande, LP's appeal.

## THE STANDARD OF REVIEW

Here, Rio Grande, LP filed its appeal from the trial court's order granting Kretzer and La Zona Rio's joint motion to dismiss the La Zona Rio Lawsuit. We review an appeal from an order granting a motion to dismiss for an abuse of discretion.[15] S*ee, e.g.*, *Mercure Co., N.V. v. Rowland*, 715 S.W.2d 677, 680 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) ("The standard of

---

[15] In addition, we apply a similar abuse-of-discretion standard in reviewing a trial court's ruling on a motion for new trial or motion to reinstate. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010) (the "[d]enial of a motion for new trial is reviewed for abuse of discretion"); *Enriquez v. Livingston*, 400 S.W.3d 610, 614 (Tex. App.—Austin 2013, pet. denied) (appellate court applies an abuse-of-discretion standard to the denial of a motion to reinstate).

review of a dismissal for the court of appeals is to inquire whether the trial court abused its discretion."); *see also Roberts v. Padre Island Brewing Co., Inc.*, 28 S.W.3d 618, 620 (Tex. App.—Corpus Christi 2000, pet. denied) ("To prevail on appeal, appellant must show a clear abuse of discretion on the trial court's order granting appellee's motion to dismiss."). On appeal from an order granting a motion to dismiss, the scope of appellate review is limited to the arguments raised in the motion to dismiss. *Mercure Co., N.V.*, 715 S.W.2d at 680–81; *see also Arizpe v. Wilcox*, No. 04-09-00408-CV, 2010 WL 1708285, at *3 (Tex. App.—San Antonio Apr. 28, 2010, pet. denied) (mem. op.) (collecting cases recognizing same limitations on appeal).

We review the entire record in determining whether an abuse of discretion occurred. *Daves v. Daniels*, 319 S.W.3d 938, 940–41 (Tex. App.—Austin 2010, pet. denied). An appellate court may reverse the trial court's ruling for an abuse of discretion "only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable." *Id.* at 941 (citing *American Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam)). The failure to analyze or apply the law correctly is an abuse of discretion, and therefore, "a court may abuse its discretion if its legal decision is incorrect." *HouseCanary, Inc. v. Title Source, Inc.*, 622 S.W.3d 254, 259 (Tex. 2021) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)). We review questions of law de novo while affording deference to the trial court's findings of fact. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). In addition, "[t]he meaning of a statute is a legal question, which we review *de novo* to ascertain and give effect to the Legislature's intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009).

## RIO GRANDE, LP HAS A DUE PROCESS RIGHT TO CHALLENGE KRETZER'S AUTHORITY

14

Both parties appear to agree that the trial court's order granting Kretzer and La Zona Rio's joint motion to dismiss the La Zona Rio Lawsuit was based on an implied finding that Kretzer had the authority to act on the partnership's behalf and to effectively allow Kretzer to seize the partnership's sole asset under the terms of the Receivership Order. However, they disagree on two major issues: (1) whether Rio Grande, LP had the right to challenge Kretzer's authority to enforce the Receivership Order against it in the La Zona Rio Lawsuit, or, alternatively, whether Rio Grande, LP's challenge should be considered an impermissible "collateral attack" on the order; and (2) assuming Rio Grande, LP had the right to challenge Kretzer's authority, whether the evidence supported the trial court's implied finding that he had such authority. We start with the question of Rio Grande, LP's right to challenge Kretzer's authority to enforce the Receivership Order against it, and as explained below, we find the answer in the limitations inherent in the Texas Turnover Statute.

## A. The limitations of the turnover statute to reach third parties

The Harris County district court issued the Receivership Order pursuant to Texas Civil Practices and Remedies Code § 31.002, commonly referred to as the turnover statute, which allows a trial court to help a judgment creditor reach nonexempt assets of a judgment debtor. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(a) (a "judgment creditor is entitled to aid from a court of appropriate jurisdiction . . . in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that is not exempt from attachment, execution, or seizure for the satisfaction of liabilities"). As part of this aid, the court may: (1) order the judgment debtor to turn over nonexempt property in the debtor's possession or subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution; (2) otherwise apply the property to the

15

satisfaction of the judgment; or (3) appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment. *Id.* § 31.002 (b).

The turnover statute, however, is limited in several respects. First, it is well-established that "Texas courts do not apply the turnover statute to non-judgment debtors." *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 227 (Tex. 1991) (citing *Cravens, Dargan & Co. v. Peyton L. Travers Co., Inc.*, 770 S.W.2d 573, 576 (Tex. App.—Houston [1st Dist.] 1989, writ denied) (no turnover action against State Board of Insurance for judgment debtor's licensing deposit); *Detox Industries, Inc. v. Gullett*, 770 S.W.2d 954, 956 (Tex. App.—Houston [1st Dist.] 1989, no writ) (no turnover action against non-debtor corporation to cancel stock in judgment debtor's name and reissue in creditor's name)).[16] In addition, because the turnover statute is merely a "procedural device" to assist a judgment creditor satisfy its judgment debts with respect to assets owned or controlled by the judgment debtor, it may not be used to determine the "substantive rights" of either a judgment debtor—much less a non-judgment debtor—when there is a dispute over ownership of assets that are the subject of collection efforts.[17] *Alexander Dubose Jefferson &*

---

[16] Numerous other courts have recognized this same principle. *See, e.g.*, *Diaz v. SMS Fin. Cap, LLC*, No. 05-21-00696-CV, 2023 WL 5604236, at *4 (Tex. App.—Dallas Aug. 30, 2023, no pet.) (mem. op.) ("Put simply, the turnover statute cannot be used as it was here because 'Texas courts do not apply the turnover statute to non-judgment debtors.'") (citing *In re deShetler*, No. 09-17-00031-CV, 2017 WL 1173811, at *4 (Tex. App.—Beaumont Mar. 30, 2017, orig. proceeding) (per curiam) (mem. op.)); *see also Turner Bros. Trucking, L.L.C. v. Baker*, 396 S.W.3d 672, 674 (Tex. App.-Dallas 2013, no pet.) (recognizing same); *Lozano v. Lozano*, 975 S.W.2d 63, 68 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); (recognizing same); *Cross, Kieschnick & Co. v. Johnston*, 892 S.W.2d 435, 437 (Tex. App.—San Antonio 1994, no writ) (recognizing same).

[17] Some courts have held that a turnover order that purports to determine a third parties' substantive rights is void. *See, e.g.*, *Tomlinson v. Khoury*, 624 S.W.3d 601, 607–609 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (citing *Cent. Bank of Houston v. Guardianship of Neblett ex rel. Neblett*, No. 01-05-01075-CV, No. 01-05-00811-CV, 2006 WL 3518568, at *2 (Tex. App.—Houston [1st Dist.] Dec. 7, 2006, no pet.) (mem. op.) ("Because the trial court lacked power to enter the turnover order, we hold that the order is void, and therefore vacate the order.")); *see also Resolution Trust Corp. v. Smith*, 53 F.3d 72, 80 (5th Cir. 1995) (holding that trial court erred in determining that stock pledge was a fraudulent transfer and thus void in a Texas turnover proceeding because the validity of the pledge agreement "must be challenged in a further proceeding"). Given our disposition of the appeal, we do not address or opine on whether the Receivership Order was void.

*Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540 S.W.3d 577, 583 (Tex. 2018) (per curiam). As the Texas Supreme Court has recognized, "the turnover statute has no provision conferring authority on trial courts to decide the substantive rights of the parties properly before it in a turnover proceeding, let alone the rights of strangers to the underlying judgment." *Id.* at 585; *see also Tomlinson v. Khoury*, 624 S.W.3d 601, 610 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (considering the "limited purpose" of the turnover statute, it may not be used to "determine third parties' substantive rights"); *In re Old Am. Cnty. Mut. Fire Ins. Co.*, No. 13-14-00231-CV, 2014 WL 4795923, at *5 (Tex. App.—Corpus Christi Sept. 25, 2014, no pet.) (mem. op.) (citing collecting cases recognizing same). To this end, courts have recognized that "any findings made by the trial court to facilitate the issuance of the turnover order will bind the judgment debtors only, and not third parties that the turnover order has not issued against." *Bay City Plastics, Inc. v. McEntire*, 106 S.W.3d 321, 325–26 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

As our sister court has explained, a "turnover order that issues against a non-party for property not subject to the control of the judgment debtor completely bypasses our system of affording due process. Otherwise, a court could simply order anyone (a bank, an insurance company, or the like) alleged to owe money to a judgment debtor to hand over cash on threat of imprisonment."[18] *Elgohary v. Herrera Partners, L.P.*, No. 01-13-00193-CV, 2014 WL 2538556, at *3 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.) (citing *Ex parte Swate*, 922 S.W.2d 122, 125 (Tex. 1996) (J. Gonzales, concurring)); *see also In re Topletz*, No. 05-19-00547-CV, 2019 WL 4027076, at *3 (Tex. App.—Dallas Aug. 27, 2019, no pet.) (mem. op.)

---

[18] As the Fifth Circuit Court of Appeals has also recognized, due process considerations also prohibit a turnover court from using "the turnover statute to adjudicate the rights and seize the assets of a third party who might not otherwise be amenable to jurisdiction in that court." *See Bollore S.A. v. Import Warehouse, Inc.*, 448 F.3d 317, 324 (5th Cir. 2006) (holding that "consistent with due process, a court may not—as the district court attempted to do in this case— use the turnover statute to adjudicate the rights and seize the assets of a third party who might not otherwise be amenable to jurisdiction in that court"); *see also Tomlinson*, 624 S.W.3d at 607 (recognizing same).

(recognizing same); *Van Dyke v. Littlemill Ltd., Prosperity Settlement Funding, Inc.*, 579 S.W.3d 639, 650 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (trial court may not "circumvent the limited procedural nature of a turnover proceeding and disregard third parties' due process rights"). Thus, a "turnover order cannot be used as a shortcut to avoid judicial proceedings necessary to provide third parties due process in adjudicating their substantive rights." *Elgohary*, 2014 WL 2538556, at *4 (citing collecting cases).

In light of the limitations of the turnover statute, the Texas Supreme Court has recognized that when there is a dispute over property ownership, a third party must be given the opportunity to have its "substantive" rights adjudicated in a "separate proceeding." *See Alexander Dubose*, 540 S.W.3d at 586 (citing *In re deShetler*, No. 09-17-00031-CV, 2017 WL 1173811 at *4–5 (Tex. App.—Beaumont March 30, 2017, orig. proceeding) (per curiam) (mem. op.)); *see also Maiden Biosciences, Inc. v. MPM Med. Inc.*, No. 3:18-CV-1354-D, 2021 WL 1056458, at *4 (N.D. Tex. Mar. 18, 2021) (where property at issue in a turnover application was subject to a substantive dispute concerning its ownership, party seeking turnover order was required to have the property rights at issue "separately adjudicated before a turnover application can be entertained"). Although the court in *Alexander Dubose* recognized that some earlier cases allowed a third party to intervene in a turnover court to litigate its substantive rights, it questioned the precedential value of those cases, again pointing to the fact that a turnover proceeding is a "purely procedural mechanism" not intended to determine the substantive rights of either the judgment debtor or a third party. *Alexander Dubose*, 540 S.W.3d at 585–86. And although the court in *Alexander Dubose* chose not to "delineate the appropriate mechanism for resolving competing substantive claims to property sought in a turnover application," it clarified that a third party is not required to intervene in a

turnover proceeding to preserve its right to assert a claim to property sought in such an application.[19] *Id.* at 586.

### B. Rio Grande, LP's status as a third party

In a similar vein, courts have recognized that a turnover order may be enforced against a non-party to the judgment "only by bringing a separate suit alleging a basis for enforcing the judgment against that party." *In re Old Am. Cnty. Mut. Fire*, 2014 WL 4795923, at *5 (citing collecting cases); *see also In re deShetler*, 2017 WL 1173811, at *4 (recognizing same); *In re Karlseng*, No. 05-14-00049-CV, 2014 WL 1018321, at *3 (Tex. App.—Dallas Feb. 12, 2014, orig. proceeding) (mem. op.) (recognizing same). As explained below, we conclude that Rio Grande, LP was a third-party stranger to the Princeton Litigation and therefore, the trial court in the La Zona Rio Lawsuit was required to determine Rio Grande, LP's substantive rights before allowing Kretzer to enforce the Receivership Order against it.

In reaching this conclusion, we emphasize that WCCG and Great Value Storage were the only two defendants in the Princeton Lawsuit and the only two named parties in the Receivership Order. And although La Zona Rio at times seeks to treat WCCG and its affiliated World Class entities formed by Natin Paul as one and the same, the only evidence in the record demonstrates otherwise. As indicated above, Rio Grande, LP submitted unrebutted evidence in the trial court indicating it was formed as a limited partnership in accordance with the Texas Business

---

[19] La Zona Rio points out for the first time in its rehearing motion that Rio Grande, LP filed an intervention in the turnover proceedings in the Houston court, challenging Kretzer's authority to act on its behalf in the La Zona Rio Lawsuit. In its response to the motion, Rio Grande, LP acknowledges that it did file an intervention in the turnover proceeding but did so over a year after the trial court allowed Kretzer to act on its behalf in the La Zona Rio Lawsuit. Rio Grande, LP also points out that the Houston court dismissed its intervention without ruling on its merits. Given the Texas Supreme Court's holding in *Alexander Dubose*, questioning whether a third party has a right to intervene in a turnover proceeding, we conclude that Rio Grande, LP's unsuccessful attempt to intervene in the turnover proceeding did not deprive it of the right to challenge Kretzer's authority to enforce the Receivership Order against it in the La Zona Rio Lawsuit.

Organizations Code. And it is well established that a business entity, such as a limited partnership, is a distinct legal entity in the eyes of the law, separate and apart from its partners and members. *See Pike v. Texas EMC Mgmt., LLC*, 610 S.W.3d 763, 778 (Tex. 2020) (recognizing that a business organization is a "separate and independent entity"); *Am. Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427, 431 (Tex. 2015) (recognizing the "Legislature 'unequivocally embrace[d] the entity theory of partnership' when it enacted the Texas Revised Partnership Act (TRPA), since codified in the Texas Business Organizations Code"); *see also Mims Bros. v. N. A. James, Inc.*, 174 S.W.2d 276, 278 (Tex. App.—Austin 1943, writ ref'd) (court is required to treat a partnership as a separate legal entity, "at least to the extent of obtaining and enforcing a judgment by or against it"). Similarly, the evidence demonstrated that Rio Grande, LP's general partner, WC 4th and Rio Grande, GP, LLC, was a limited liability company, which is also a distinct legal entity, separate and apart from its members—even when there is only one member in the LLC. *See Sherman v. Boston*, 486 S.W.3d 88, 94 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (recognizing that a limited liability company is a legal entity separate from its sole member); *see also Daniels v. Empty Eye, Inc.*, 368 S.W.3d 743, 752 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (limited partner who also was president of the corporation serving as general partner of the limited partnership was an entity distinct from the corporate general partner).

Moreover, we note that Kretzer sought to enforce the Receivership Order against Rio Grande, LP, claiming that Rio Grande, LP was a "subsidiary" of WCCG but providing no proof of such. But even if Rio Grande, LP or its general partner could be considered subsidiaries of WCCG, this would not rob either entity of its status as a separate and distinct legal entity apart from WCCG. To the contrary, it is well-established that subsidiary and parent companies are "separate and distinct" entities as a matter of law, and the separate nature of such entities "will

20

generally be observed by the courts even where one company may dominate or control the other company, or treats the other company as a mere department, instrumentality, or agency." *R&M Mixed Beverage Consultants, Inc. v. Safe Harbor Benefits, Inc.*, 578 S.W.3d 218, 229–30 (Tex. App.—El Paso 2019, no pet.) (citing *SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008) (recognizing that the "[c]reation of affiliated corporations to limit liability while pursuing common goals lies firmly within the law and is commonplace")); *see generally BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002) (recognizing that "Texas law presumes that two separate corporations are indeed distinct entities").

In addition, "[a] parent company and its subsidiary maintain their independence even though the same persons are directors or managers of both corporations." *Neff v. Brady*, 527 S.W.3d 511, 525 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 376 (Tex. 1984)). "The same is true even though most or all the capital stock of a subsidiary corporation is owned by its parent corporation." *Id*. (citing *Docudata Records Mgmt. Services, Inc. v. Wieser*, 966 S.W.2d 192, 197 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)). Thus, as the Texas Supreme Court has stated, it has "never held corporations liable for each other's obligations merely because of centralized control, mutual purposes, and shared finances." *R&M Mixed Beverage*, 578 S.W.3d at 229–30 (citing *SSP Partners*, 275 S.W.3d at 455).

We recognize that in certain situations, a court may disregard a company's business structure and treat a subsidiary company as being an "alter ego" of its parent, such as when there is evidence of "abuse, or . . . injustice and inequity." *See id. at 230* (citing *SSP Partners*, 275 S.W.3d at 451 (recognizing that the limitation on liability afforded by the corporate structure can be ignored only "when the corporate form has been used as part of a basically unfair device to achieve an inequitable result")); *but see Semperit Technische Produkte Gesellschaft M.B.H. v.*

*Hennessy*, 508 S.W.3d 569, 585 (Tex. App.—El Paso 2016, no pet.) (recognizing that "[a] subsidiary corporation will not be regarded as the alter ego of its parent merely because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of the control that stock ownership gives to stockholders").

Here neither La Zona Rio nor Kretzer produced any evidence in the trial court that would have allowed the court to conclude that WCCG used Rio Grande, LP or its general partner as its alter ego. Stated otherwise, there is no evidence in the record to support the conclusion that either Rio Grande, LP or its general partner were not legally distinct from WCCG. Nor does La Zona Rio attempt to assert as much in its appellate briefing. At best, it alleges that the various World Class entities are "affiliates" of WCCG and that Natin Paul does business through these various entities.[20] However, as set forth above, regardless of these affiliations, the evidence in the record reflects that Rio Grande, LP and its general partner are separate legal entities, and as such, they had the right to have their substantive rights adjudicated in the trial court before Kretzer could be allowed to enforce the Receivership Order against them.

### C. Rio Grande, LP's challenge is not an impermissible collateral attack

La Zona Rio, however, contends Rio Grande, LP was not entitled to challenge the Receivership Order's validity in the La Zona Rio Lawsuit because the Receivership Order was a final judgment not subject to a collateral attack in a separate proceeding. La Zona Rio contends WCCG was instead required to raise the issue in the turnover proceeding itself. In support of its

---

[20] La Zona Rio correctly points out that this Court, as well as the Austin Court of Appeals, has in the past recognized Natin Paul's propensity to create various entities using such names as "World Class" and "WC" and that he operates his business interests though these entities. *See 1st & Trinity Super Majority, LLC v. Milligan*, 657 S.W.3d 349, 357 (Tex. App.—El Paso 2022, no pet.); *WC 1st & Trinity, LP v. Roy F. & JoAnn Cole Mitte Found.*, No. 03-19-00799-CV, No. 03-19-00905-CV, 2021 WL 4465995, at *1 (Tex. App.—Austin Sept. 30, 2021, pet. denied) (mem. op.). And it contends that this forms a basis for concluding WCCG had an ownership interest in Rio Grande, LP. However, neither this Court nor the Austin Court of Appeals has ever held that WCCG, the judgment debtor, owns or controls any of the other World Class entities for debt collection purposes.

argument, La Zona Rio cites a series of cases in which courts have held that a party to a judgment, as well as the party's successors in interest, may only challenge the validity of a judgment in the court in which the judgment issued and may not collaterally attack the judgment in a separate proceeding in another court. *See, e.g.*, *1st & Trinity Super Majority, LLC v. Milligan*, 657 S.W.3d 349, 364–65 (Tex. App.—El Paso 2022, no pet.) (holding that a party to a judgment, and the party's successors in interest, may not initiate a separate lawsuit to challenge the validity of a trial court's order that is otherwise appealable, as any such lawsuit constitutes an impermissible "collateral attack" on the judgment) (citing *Browning v. Prostok*, 165 S.W.3d 336, 345–46 (Tex. 2005) (holding that where party failed to timely appeal confirmation order, filing a separate lawsuit challenging the validity of the order constituted an impermissible collateral attack on the order)); *Savage v. Ivey*, 658 S.W.3d 883, 886 (Tex. App.—El Paso 2022, no pet.) (tenant who claimed he was wrongfully evicted based on a forcible detainer judgment entered in a justice of the peace court could not collaterally attack the judgment in a separate proceeding contending that the court lacked the jurisdiction to enter the judgment); *Ranger Ins. Co. v. Rogers*, 530 S.W.2d 162, 167 (Tex. App.—Austin 1975, writ ref'd n.r.e.) (where court determined that "appellant was not a stranger" to a consent judgment, appellant could not collaterally attack the judgment).

La Zona Rio cites two cases in which courts have held that a *judgment debtor* may only challenge the authority given to a receiver in a turnover order in the turnover proceeding itself and may not collaterally attack the order in a separate proceeding. *See, e.g.*, *Davis v. West*, 317 S.W.3d 301, 308–10 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (holding that a judgment debtor's claim in a Brazoria County suit that a receiver's "powers exceed[ed] that allowed by the statute" constituted an impermissible "collateral attack on the turnover order" that appointed the receiver in a prior Harris County suit); *Sun Tec Computer, Inc. v. Recovar Group, LLC*, No. 05-14-00257-

23

CV, 2015 WL 5099191, at *2–4 (Tex. App.—Dallas Aug. 31, 2015, no pet.) (mem. op.) (holding that a judgment debtor could not attack "actions taken by the receiver" pursuant to a turnover order or assert that the "turnover order" appointing the receiver was void in a separate lawsuit because doing so constituted a collateral attack on that order). However, La Zona Rio's reliance on these cases is misplaced because Rio Grande, LP was neither the judgment debtor in the turnover proceedings nor a party to the Princeton Lawsuit. As a third-party stranger to the turnover proceedings and Princeton Lawsuit, Rio Grande, LP has a right to challenge Kretzer's attempts to enforce the Receivership Order against it and to have its substantive rights adjudicated prior to the enforcement.

And finally, La Zona Rio also relies on the principle that judgments must be accorded finality, citing two cases in which courts refused to allow third parties to collaterally attack a final judgment in a separate proceeding. *See Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 882 (Tex. 1973) (holding that Sierra Club's lawsuit was a "collateral attack" where it sought to challenge an unappealed judgment issued in a prior condemnation lawsuit, claiming that the school district wrongfully exercised its rights of eminent domain to obtain ownership of park land); *see also Worley v. Avinger*, No. 05-18-00648-CV, 2019 WL 3729508, at *5 (Tex. App.—Dallas Aug. 8, 2019, pet. denied) (mem. op.) (finding that children of deceased parents could not bring a separate proceeding to collaterally attack a judgment that was issued against parents absent showing that the judgment was void). However, in both of those cases, the third parties were attempting to collaterally attack a final judgment as a means of obtaining a benefit for themselves or their organization. Here, however, we are faced with an entirely different situation in which Kretzer was attempting to use the Receivership Order against Rio Grande, LP, to deprive it of

partnership assets, without allowing Rio Grande, LP its day in court to challenge Kretzer's authority to do so.

In this same vein, we note that turnover orders—and receivership orders in particular—are unique in nature, and while some portions of such an order may be considered final and appealable, other provisions may not. *See Alexander Dubose*, 540 S.W.3d at 586–88. As the Texas Supreme Court has recognized, a turnover order is considered final and appealable when it serves as a mandatory injunction ordering a judgment debtor to turn over assets. *Id.* at 596. However, "other provisions of the same order can be interlocutory and unreviewable because they do not resemble injunctive relief." *Id.* at 587. Thus, in *Alexander Dubose*, the Court held that a provision in a turnover order requiring disputed funds to be deposited in the court's registry did not function as a mandatory injunction and therefore could not be considered a final appealable order, as there had been no adjudication of the ownership of the funds in the turnover order. Instead, the court held that a subsequently issued "release order," which adjudicated ownership of the funds, was the first and only order that could be considered final with respect to ownership of the funds. *Id.*

Here, the Receivership Order contained various provisions authorizing Kretzer to obtain property held by third parties, i.e., the various entities that WCCG purportedly had an interest in, but the order did not adjudicate the substantive rights of those third parties to the extent that they sought to dispute that they held property belonging to WCCG. And as such, those provisions cannot be considered "final" with respect to any third parties affected thereby who have not had their substantive rights adjudicated. *See Mitchell v. Turbine Res. Unlimited, Inc.*, 523 S.W.3d 189, 196 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (holding that a turnover order that authorized a receiver to sell property "subject to third parties' rights" could not be considered a final order, and was instead considered "interlocutory and not appealable").

25

Accordingly, we conclude that Rio Grande, LP had the right to challenge the Receivership Order in the La Zona Rio Lawsuit to the extent that Kretzer was attempting to enforce the order against it and deprive it of partnership assets that it claims WCCG did not own or control.

## THERE IS NO EVIDENTIARY SUPPORT FOR AN IMPLIED FINDING THAT KRETZER HAD THE AUTHORITY TO ACT ON RIO GRANDE, LP'S BEHALF

La Zona Rio argues that even if we determine Rio Grande, LP had a right to challenge Kretzer's authority, we should conclude that there was sufficient evidence from which the trial court could have impliedly found that Kretzer properly exercised his authority in enforcing the Receivership Order against Rio Grande, LP. La Zona Rio points to three separate provisions in the Receivership Order that it contends support such a finding. A closer look at the three provisions, however, convinces us that on this record Kretzer did not establish that he had the authority to take the actions he took.

### A. The provision requiring WCCG to turn over any "interests" it had in any partnership or limited liability company

First, La Zona Rio points to the provision in the Receivership Order directing WCCG—as the judgment debtor—to "identify and turn over to [Kretzer] all interests of [WCCG] in any business or venture, including limited liability companies and limited partnerships." Even assuming WCCG had an "interest" in Rio Grande, LP or its general partner—a fact that neither Kretzer nor La Zona Rio established on this record—under Texas law, WCCG's only "interest" in the partnership or the LLC would be limited to its share of the profits and its right to receive distributions. *See Pajooh*, 518 S.W.3d at 562 (recognizing that an individual partner has no ownership interest in the specific property belonging to the partnership and that its interests are limited to his share of profits and losses or similar items and the right to receive distributions); *see also* TEX. BUS. ORGS. CODE ANN. § 152.101 (partnership property is "not property of the

26

partners," and a partner "does not have an interest in partnership property"); *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 846 (Tex. App.—Corpus Christi 2017, no pet.) (recognizing that a member of a limited liability company or his assignee does not have an interest in any specific property of the company) (citing TEX. BUS. ORGS. CODE ANN. § 101.106(b) ("A member of a limited liability company or an assignee of a membership interest in a limited liability company does not have an interest in any specific property of the company.")).

Thus, this provision of the Receivership Order would have, at most, authorized Kretzer to collect on WCCG's "interest" in receiving profits or distributions from either the partnership or the LLC. And as Rio Grande, LP points out, the Texas Business Organizations Code provides that the exclusive remedy by which to obtain a judgment debtor's interest in either a partnership or an LLC is by the entry of a charging order attaching the distributions owed to either a partner or LLC member, which Kretzer admittedly failed to obtain.[21] *See Pajooh*, 518 S.W.3d at 562, 565 (citing TEX. BUS. ORGS. CODE ANN. § 153.256(d) ("The entry of a charging order is the exclusive remedy by which a judgment creditor of a partner or of any other owner of a partnership interest may satisfy a judgment out of the judgment debtor's partnership interest.") and TEX. BUS. ORGS. CODE ANN. § 101.112(d) ("The entry of a charging order is the exclusive remedy by which a judgment creditor of a member or of any other owner of a membership interest may satisfy a judgment out of the judgment debtor's membership interest.")); *see also In re Prodigy Servs., LLC*, No. 14-14-

---

[21] In its supplemental briefing in response to La Zona Rio's motion for rehearing, Rio Grande, LP also directs our attention to two recent cases from our sister courts reaching this same conclusion. *See Klinek v. LuxeYard, Inc.*, 672 S.W.3d 830, 839 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (recognizing that although a member's interest in an LLC is a non-exempt asset, a charging order is "the exclusive remedy by which a judgment creditor of a member or of any other owner of a membership interest may satisfy a judgment out of the judgment debtor's membership interest."); *Bran v. Spectrum MH, LLC*, No. 14-22-00479-CV, 2023 WL 5487421, at *6 (Tex. App.—Houston [14th Dist.] Aug. 24, 2023, pet. filed) (mem. op.) (recognizing that "the entry of a charging order is the exclusive remedy by which a judgment creditor of a member or of any other owner of a membership interest may satisfy a judgment out of the judgment debtor's membership interest").

00248-CV, 2014 WL 2936928, at *5 (Tex. App.—Houston [14th Dist.] June 26, 2014, orig. proceeding) (mem. op.) (recognizing same).

La Zona Rio counters that in certain circumstances, courts have allowed a judgment creditor to collect on assets held by either a partnership or an LLC without a charging order, citing to our sister court's opinion in *Heckert v. Heckert*, No. 02-16-00213-CV, 2017 WL 5184840, at *7–9 (Tex. App.—Fort Worth Nov. 9, 2017, no pet.) (mem. op.).[22] In *Heckert*, the Fort Worth Court of Appeals opined that "the charging order was developed to prevent a judgment creditor's disruption of an entity's business by forcing an execution sale of the partner's or member's entity interest to satisfy a debt of the individual partner or member." *Heckert,* 2017 WL 5184840, at *7– 9 (citing Michael C. Riddle, et al., *Choice of Business Entity in Texas*, 4 Hous. Bus. & Tax L.J. 292, 318 (2004) ("[T]he charging order developed as a way to prevent the creditor of one partner from holding up the business of the entire partnership and causing injustice to the other partners.")). And the court held that the purpose of requiring a charging order was not served in a personal injury case in which an ex-wife had received a judgment against her ex-husband, where the ex-husband had created a non-operating LLC and partnership, of which he was the sole member and partner, and placed assets into those entities with the apparent intent of sheltering the assets from his ex-wife's collection efforts. *Id.* at *7–9. The court found that under those circumstances, the trial court could properly order the ex-husband to turn over those assets to his ex-wife to satisfy

---

[22] In a footnote, La Zona Rio contends that the rule cited in these cases making a charging order the exclusive remedy to collect on partnership assets only applies to judgment creditors and not to court-appointed receivers. However, La Zona Rio cites no authority for the proposition that a receiver is to be treated differently than a judgment creditor in his attempts to collect on a partner's debt. And there appear to be cases in which courts have, at least indirectly, indicated that a receiver must also apply for a charging order to be entitled to seize a partnership interest belonging to a judgment debtor. *See, e.g.*, *Howe v. Red Oak State Bank*, No. 10-90-037-CV, 1990 WL 10089566, at *3 (Tex. App.— Waco Dec. 20, 1990, no writ) (finding receiver was authorized to apply for a charging order to collect on a judgment).

the judgment, as doing so would cause no disruption to an operating business or cause harm to any other parties. *Id.* at *9.

Relying on the reasoning in *Heckert*, La Zona Rio contends that a charging order was unnecessary to allow Kretzer to collect on the assets held by Rio Grande, LP because Rio Grande, LP was admittedly a "single purpose entity holding commercial property," and its business would therefore not be disrupted by ordering a turnover of the property. But Rio Grande, LP points out that unlike the situation in *Heckert*, the evidence reflected that the partnership was an operating business which had been leasing its building space to tenants, and the partnership had three limited partners whose interests were at stake in the La Zona Rio Lawsuit—in addition to the general partner that La Zona Rio claims was affiliated with WCCG. Therefore, the partnership's business was disrupted by Kretzer's actions in utilizing the Receivership Order to allow the partnership's only asset to be alienated to La Zona Rio. And, unlike the situation in *Heckert*, the record before us contains no evidence that WCCG created Rio Grande, LP as a "shell" entity for the purpose of sheltering assets from collection.

Accordingly, we conclude that the provision in the Receivership Order requiring WCCG to turn over any interests it had in a partnership or LLC at most gave Kretzer the right to collect on any distributions or profits to which WCCG was entitled by virtue of any such interest and did not give him the right to take possession of the partnership's assets, which he effectively did by taking control of Rio Grande, LP's lawsuit. *See Pajooh*, 518 S.W.3d at 565 (citing TEX. BUS. ORGS. CODE ANN. § 153.256(f) (the "creditor of a partner or of any other owner of a partnership interest does not have the right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited partnership")).

### B. The provision allowing Kretzer to sell, manage and operate an LLC in which WCCG is a "member"

Second, La Zona Rio points to the provision in the Receivership Order that authorized Kretzer "to seize the membership interest of any Limited Liability Company in which [WCCG] is a member," and "to sell, manage, and operate the Limited Liability Company as [Kretzer] shall think appropriate." La Zona Rio contends there was sufficient evidence in the record from which the trial court could have impliedly found that WCCG had a "membership interest" in WC 4th and Rio Grande, GP, LLC—Rio Grande, LP's general partner. And in turn, La Zona Rio argues that Kretzer had the right under the Receivership Order to take over the operation and management of the LLC and sell its assets. We conclude, however, that there are at least two missing steps in this analysis.

The first missing step is the failure of either Kretzer or La Zona Rio to point to any evidence in the record to establish that WCCG was in fact a "member" of the LLC. The Texas Business Organizations Code provides that an LLC must have at least one member. *See* TEX. BUS. ORGS. CODE ANN. § 101.101 (a) ("A limited liability company may have one or more members. Except as provided by this section, a limited liability company must have at least one member.") However, there is nothing in this record to demonstrate that WCCG was in fact a "member" in WC 4th and Rio Grande, GP, LLC.[23] As set forth above, while La Zona Rio may be correct that WCCG is

---

[23] La Zona Rio asks that we take "judicial notice" of the record in the companion case in Cause No. 08-22-00225-CV to establish the relationship between WCCG and the LLC. As La Zona Rio points out, an appellate court may in certain circumstances take judicial notice of the record in a related case, such as when the record impacts a court's jurisdiction to hear a case or bears on mootness issues. *See FinServ Cas. Corp. v. Transamerica Life Ins. Co.*, 523 S.W.3d 129, 147 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). However, "[t]aking judicial notice of documents not considered by the trial court often is not appropriate because, in analyzing the merits of an appeal, appellate courts generally cannot consider evidence not before the trial court when the court made the challenged ruling." *Id.* at 147 (citing *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 707 (Tex. 2008)). Here, we are called upon to determine whether the trial court erred in rendering its decision to dismiss the La Zona Rio Lawsuit, and we are therefore constrained to review that decision based solely on the record before the court when it made its decision. *See Univ. of Texas v. Morris*, 344 S.W.2d 426, 429 (Tex. 1961) (court's decision to affirm the trial court's order granting an injunction was "controlled by the record made in the trial court at the time the injunction was issued"); *see also Perry*

affiliated with the LLC or may even be a parent company, given the lack of any evidence that WCCG was a "member" in the LLC, we cannot say that the trial court could have impliedly found that Kretzer had the authority under the Receivership Order to seize control of the LLC.

Even if WCCG had a membership interest in the LLC, the second missing step is the lack of evidence that Kretzer did in fact seize control of WCCG's interest in the LLC or that he sought to operate or manage the LLC on WCCG's behalf. Instead, the only evidence in the record demonstrates that Kretzer simply filed a "notice" with the trial court stating that he had substituted himself as counsel of record for *Rio Grande, LP* in the La Zona Rio Lawsuit. There is nothing to suggest that he did so as part of his management and operation of the LLC. And in fact, the record does not contain the LLC's governing documents, or otherwise support an implied finding that Kretzer would have had the right, as part of any assumed management duties in operating the LLC, to unilaterally terminate the La Zona Rio Lawsuit on Rio Grande, LP's behalf and enter into a settlement agreement with La Zona Rio that included deeding the building to La Zona Rio.

Again, the fallacy in La Zona Rio's argument lies in its attempts to blur the distinction between the various World Class entities and treat them as one and the same as WCCG in the absence of evidence to support that position.

### C. The provision allowing Kretzer to take possession of the judgment debtor's assets

Finally, La Zona Rio points to a third provision in the Receivership Order giving Kretzer the authority to take possession of and sell all "leviable" and "nonexempt" property of the "Judgment Debtors" to include "real property . . . causes of action . . . [and] contract rights." And La Zona Rio urges that a judgment debtor's "interest" in either a partnership or an LLC is

---

*Homes v. Cull*, 258 S.W.3d 580, 596 n.89 (Tex. 2008) (limiting its review "to the record before the trial judge"). We therefore deny La Zona Rio's request to take judicial notice of the record in the companion case.

considered "nonexempt" for purposes of the turnover statute, again citing to our sister court's opinion in *Heckert* in which the court recognized that a judgment debtor's interests in both a partnership and an LLC are considered nonexempt assets that may be levied upon by a judgment creditor. *See Heckert*, 2017 WL 5184840, at \*7; *see also Stanley v. Reef Secs., Inc.*, 314 S.W.3d 659, 664, (Tex. App.—Dallas 2010, no pet.) (treating partnership distributions as nonexempt property). In turn, La Zona Rio contends that this provision gave Kretzer the authority to take possession of and sell Rio Grande, LP's assets. But again, we find several problems with this argument.

First and foremost, the Receivership Order only gave Kretzer the authority to take possession of and sell causes of action and real property belonging to the "judgment debtor," i.e., WCCG. It did not extend Kretzer's authority to seize such property from any of WCCG's subsidiaries or affiliated entities. And once again, we find no evidence in the record to support a finding that WCCG and its affiliated World Class entities can be considered one and the same, or alter egos of each other, such that Kretzer had the authority to collect on assets owned or controlled by either Rio Grande, LP or its general partner to satisfy WCCG's debt. *See United Bank Metro v. Plains Overseas Group, Inc.*, 670 S.W.2d 281, 282–83 (Tex. App.—Houston [1st Dist.] 1983, no writ) (holding that judgment creditor could not collect on assets owned by two corporations that it claimed were alter egos of the judgment debtors without establishing that the corporations were in fact alter egos in a separate proceeding) (citing *Pace Corp. v. Jackson*, 284 S.W.2d 340, 351 (Tex. 1955) (recognizing that "[c]ourts will not disregard the corporate fiction and hold individual officers, directors or stockholders liable on the obligations of a corporation except where it appears that the individuals are using the corporate entity as a sham to perpetrate a fraud, avoid personal liability, to avoid the effect of a statute, or in a few other exceptional situations")); *see also Maiz*

*v. Virani,* 311 F.3d 334, 336 (5th Cir. 2002) (recognizing that under Texas law, a judgment creditor cannot use the turnover statute to reach the assets of corporations which are allegedly alter-egos of the Judgment Debtors without a separate hearing to "pierce[] their corporate veils"); *Plaza Court, Ltd. v. West*, 879 S.W.2d 271, 276–77 (Tex. App.—Houston [14th Dist.] 1994, no writ) (recognizing that "[t]he turnover statute does not support a proceeding against an entity who is not a judgment debtor, until a judgment creditor succeeds in piercing the corporate veil"). And without such evidence, the trial court could not have impliedly found that Kretzer had this right. To the contrary, as our sister court has recognized, a judgment creditor (or in this case a receiver) may not simply "announce its belief" that a judgment debtor and a third party are in essence one and the same without proof of such, and in effect, skip a trial on the merits, and "declare itself the winner." *United Bank Metro*, 670 S.W.2d at 283.

Accordingly, as the record before us does not support an implied finding that Kretzer had the authority to act on Rio Grande, LP's behalf in the La Zona Rio Lawsuit, and because the record does not reflect that the trial court gave Rio Grande, LP the opportunity to have its substantive rights adjudicated before allowing Kretzer to enforce the Receivership Order against it, we conclude that the trial court abused its discretion in granting Kretzer and La Zona Rio's joint motion to dismiss the La Zona Rio Lawsuit. Accordingly, we reverse the trial court's order granting the motion to dismiss Rio Grande, LP's lawsuit and remand for further proceedings to give Rio Grande, LP that opportunity.

We sustain Rio Grande, LP's Issues One and Two.

## CONCLUSION

We reverse the trial court's judgment and remand to the trial court for further proceedings in accordance with our opinion.

LISA J. SOTO, Justice

March 15, 2024

Before Alley, C.J., Palafox and Soto, JJ.
Palafox, J. would grant the Motion for Rehearing